**STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, et al.,**
**Appellants,**

v.

**FORD MOTOR COMPANY, Respondent.**

No. C3–97–1300.

Court of Appeals of Minnesota.

Dec. 9, 1997.

Michael T. Hughes, Lori L. Jensen–Lea, La Bore & Giuliani, Ltd., Hopkins, for appellants.

Donald M. Lewis, Sheila T. Kerwin, Halleland, Lewis, Nilan, Sipkins & Johnson, P.A., Minneapolis, for respondent.

Considered and decided by SHORT, P.J., and KALITOWSKI and PETERSON, JJ.

## OPINION

SHORT, Judge.

In an action involving insurance proceeds, the subrogated insurer seeks to hold an automobile manufacturer liable for fire damage to a minivan. The trial court concluded the economic loss doctrine barred all of the insurer's claims and granted summary judgment in favor of the manufacturer. On appeal, the insurer argues: (1) the economic loss doctrine does not govern damage to defective products purchased by consumers; (2) the statute of limitations was tolled by the manufacturer's alleged fraudulent concealment of the product defect; (3) Minn.Stat. § 336.2–725 (1996) is unconstitutional when it functions to bar a claim prior to its discovery; and (4) part of the manufacturer's brief contains information not submitted to the trial court and should be stricken.

## FACTS

In 1993, Dennis and Diane Anderson (insureds) purchased a used 1989 Ford Aerostar Minivan, which they insured with State Farm Mutual Automobile Insurance Company (insurer). Two years later, while the minivan was parked and unoccupied, a fire destroyed the vehicle and its contents, resulting in property damage of $8,290.26. An inspection of the damaged vehicle revealed extensive fire damage to the area surrounding the steering column. The insurer paid proceeds only for the insured's losses from damage to the vehicle itself.

More than one year after the fire, the insureds received a recall notice from the manufacturer advising them that a defect in the ignition switch was found in a "small number of vehicles," which "could lead to overheating, smoke and possibly fire in the steering column." The notice instructed the insureds, as registered owners of the minivan, to service the vehicle pursuant to the recall notice. On June 13, 1996, following the insureds' receipt of the recall notice, the insurer, asserting its subrogation rights, filed this lawsuit alleging negligence, strict liability, and breach of warranty against the manufacturer. On a defense motion, the trial court granted summary judgment against the insurer.

## ISSUES

I. Does the economic loss doctrine apply to a consumer's claim involving damage to a defective product itself?

II. Does the allegation of fraudulent concealment create a fact issue barring the entry of summary judgment?

III. Is Minn.Stat. § 336.2–735 constitutional when it bars a claim prior to its discovery?

IV. Does the manufacturer's appendix contain material outside the record?

## ANALYSIS

On appeal from a grant of summary judgment, we determine whether there are any genuine issues of material fact and whether the trial court erred in its application of the law. *State by Cooper v. French,* 460 N.W.2d 2, 4 (Minn.1990); *see* Minn. R. Civ. P. 56.03 (setting forth trial court's standard for summary judgment). While we view the evidence in the light most favorable to the party opposing the motion, the nonmoving party must produce specific facts that create a genuine issue for trial. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). We do not defer to a trial court's analysis of purely legal issues. *Frost–Benco Elec. Ass'n v. Minnesota Pub. Utils. Comm'n,* 358 N.W.2d 639, 642 (Minn.1984).

### I.

In a commercial transaction, a plaintiff cannot sue in tort for losses due to a defective product itself. *See East River Steamship Corp. v. Transamerica Delaval,*

*Inc.,* 476 U.S. 858, 868–71, 106 S.Ct. 2295, 2300–02, 90 L.Ed.2d 865 (1986) (concluding where product injures only itself, reasons for imposing tort duty are weak and those for leaving party to its contractual remedies are strong). Losses due to damage to a defective product can only be pursued under the Uniform Commercial Code. *See generally* Minn.Stat. § 336.2–102 (1996) (describing scope of U.C.C. Article 2 as applicable to transactions in goods). This judicial limitation is commonly referred to as the "economic loss doctrine." *See* Minn.Stat. § 604.10 (1996) (adopting economic loss doctrine); *see also Lloyd F. Smith Co., Inc. v. Den–Tal–Ez, Inc.,* 491 N.W.2d 11, 14 n. 5 (Minn.1992) (defining economic loss as damages recoverable in breach of warranty action). The economic loss doctrine preserves the boundary between tort and contract law. *See* Restatement (Third) of Torts § 21(c) (Proposed Final Draft 1997) (precluding tort recovery for damage to defective product itself); *see also* Roger J. Traynor, *The Ways and Meanings of Defective Products and Strict Liability,* 32 Tenn. L.Rev. 363, 364–70 (1965) (analyzing reasons to compensate consumer for damage caused by product defect).

◼ The insurer argues the economic loss doctrine does not apply to a transaction involving damage to defective property purchased by a non-merchant. *See Den–Tal–Ez, Inc.,* 491 N.W.2d at 16 (concluding in classic commercial transaction involving experienced merchants, business need for reasonable containment of risk of defective product met by providing exclusive warranty remedy with short statute of limitations); *Hapka v. Paquin Farms,* 458 N.W.2d 683, 688 (Minn.1990) (concluding code remedies may be less than adequate in ordinary consumer transaction). However, a subrogee is generally entitled to no greater rights than those possessed by the subrogor. *Hermeling v. Minnesota Fire & Cas. Co.,* 548 N.W.2d 270, 273 (Minn.1996); *see also Employers Liab. Assurance Corp. v. Morse,* 261 Minn. 259, 263, 111 N.W.2d 620, 624 (1961) (concluding subrogee steps into shoes of subrogor).

◼ Although the insureds could pursue a cause of action against the manufacturer for alleged defects in the 1989 minivan, their lawsuit would be subject to applicable laws, including Minn.Stat. § 604.10. By its explicit language, that statute provides "the economic loss recoverable in tort under this section does not include economic loss due to damage to the goods themselves." Minn.Stat. § 604.10(c). Contrary to the insurer's argument, the economic loss doctrine does not exempt consumer goods or non-merchant transactions. *See* Minn.Stat. § 645.16 (1996) (mandating every law be construed to give effect to each of its provisions). In the absence of such legislative expression, we decline to restrict Minn.Stat. § 604.10(c) to commercial transactions not involving consumers.

◼ The economic loss doctrine does not foreclose a non-merchant's ability to bring a tort action. When the defective product damages "other property," non-merchants can recover for the losses to the "other property" through a tort or contract action. *Den–Tal–Ez, Inc.,* 491 N.W.2d at 15; *see* Minn.Stat. § 604.10(a) (finding economic loss due to damage to tangible property other than goods sold is recoverable as long as parties to transaction are non-merchants); Minn.Stat. § 336.2–104(1) (1996) (defining term "merchant" as person who deals in goods of kind or by occupation holds self out as having knowledge or skill peculiar to practices or goods involved in transaction). However, to permit a tort action based on minimal damage to "other property," as compared to the losses incurred from the damage to the product itself, would subvert the law. *See Den–Tal–Ez, Inc.,* 491 N.W.2d at 15 (concluding tort liability for damage to "other property" allowed in cases that do not undermine code's primary role in regulating risk of loss for defective product).

◼ It is undisputed: (1) the insured suffered losses due to the "totalling" of the minivan and de minimis damage to other property as a result of the fire; (2) the insurer seeks reimbursement for insurance proceeds paid as a result of damage to the automobile; and (3) the insurer reserved judgment on the insureds' claims arising from damage to any "other property" caused

by the fire. Given these facts, the economic loss doctrine bars the insurer's claims. Our conclusion that the economic loss doctrine applies to consumers as well as businesses in an action for loss of the product itself is consistent with opinions from foreign jurisdictions. *See, e.g., Somerset Marine, Inc. v. Forespar Prods. Corp.*, 876 F.Supp. 1114, 1115 (C.D.Cal.1994) (concluding "an action for damage to the product itself remains 'the essence of a warranty action' whether or not the product was used 'commercially' "; a special exception for consumers is "useless and likely to lead to confusion"); *Karshan v. Mattituck Inlet Marina & Shipyard, Inc.*, 785 F.Supp. 363, 365–66 (E.D.N.Y.1992) (concluding economic loss doctrine applies to consumer transactions); *Wellcraft Marine v. Zarzour*, 577 So.2d 414, 418 (Ala.1990) (concluding economic loss doctrine "remains the same, regardless of the nature of the customer"); *Danforth v. Acorn Structures, Inc.*, 608 A.2d 1194, 1200–01 (Del.1992) (concluding in not applying economic loss doctrine to consumer transactions court "would defeat the legislative intent of the General Assembly in enacting Article 2 of the Uniform Commerical Code"); *Casa Clara Condominium Ass'n, Inc. v. Charley Toppino & Sons, Inc.*, 620 So.2d 1244, 1247 (Fla.1993) (holding economic loss doctrine covers homeowner's claim, despite fact that "a house is the largest investment many consumers ever make"); *Waggoner v. Town & Country Mobile Homes, Inc.*, 808 P.2d 649, 653 (Okla.1990) (holding claim for defective mobile home barred by economic loss doctrine); *Jones v. General Motors Corp.*, 428 Pa.Super. 544, 631 A.2d 665, 666 (1993) (concluding economic loss doctrine "is equally applicable to disputes involving claims brought by individuals"); *Stanton v. Bayliner Marine Corp.*, 123 Wash.2d 64, 866 P.2d 15, 24 (1993) (concluding the "weight of authority persuades us that the [economic loss doctrine] * * * does apply to consumer transactions").

## II.

■ The doctrine of fraudulent concealment can be used to toll a breach of warranty claim under Minn.Stat. § 336.2–725 (1996). *See Kociemba v. G.D. Searle & Co.*, 680 F.Supp. 1293, 1302 (D.Minn.1988) (concluding doctrine of fraudulent concealment extends to claims under Minn.Stat. § 336.2–725). However, the alleged concealment must be fraudulent or intentional. *Wild v. Rarig*, 302 Minn. 419, 451, 234 N.W.2d 775, 795 (1975). In the absence of a fiduciary relationship, there must be an affirmative act designed to and which does prevent the discovery of the cause of action. *Id.*

In its brief, the insurer argues the potential of fraudulent concealment bars summary judgment as a matter of law. Specifically, the insurer contends the manufacturer's recall notice, received over one year after the fire, provides an admission by the manufacturer and evidence the manufacturer "presumably had been researching the issue [of defective steering column] for some time" and had gathered "some data or research." At oral argument, however, the insurer's counsel admitted he: (1) had no "proof or evidence" of concealment; and (2) failed to request a continuance under Minn. R. Civ. P. 56.06. Under these circumstances, we conclude the insurer's general assertions constitute mere speculation and conjecture, and are insufficient as a matter of law to avoid summary judgment. *See Bob Useldinger & Sons, Inc. v. Hangsleben*, 505 N.W.2d 323, 328 (Minn.1993) (concluding no fact issue precluding summary judgment where evidence presented by non-moving party more speculative than probative); *Hunt v. IBM Mid America Employees Fed. Credit Union*, 384 N.W.2d 853, 855 (Minn.1986) (concluding party opposing summary judgment must point to specific facts that create issue for trial). There is no triable fact issue relating to fraudulent concealment.

## III.

■ The constitutionality of a statute presents a question of law, which we review de novo. *Estate of Jones by Blume v. Kvamme*, 529 N.W.2d 335, 337 (Minn.1995). We exercise the power to declare a statute unconstitutional with extreme caution and only when absolutely necessary. *In re Haggerty*, 448 N.W.2d 363, 364 (Minn.1989). Therefore, we uphold a statute unless a party proves the statute is unconstitutional beyond a reasonable doubt. *Kvamme*, 529 N.W.2d at 337.

 The insurer argues the application of a four-year statute of limitations in this case is unconstitutional because it functions to violate its "right to a remedy and due process." *See* Minn. Const. art. I, § 7 (guaranteeing no person shall be deprived of property rights without due process of law); Minn. Const. art. I, § 8 (stating "[e]very person is entitled to a certain remedy in the laws for all injuries or wrongs which he may receive"); *see also Calder v. City of Crystal,* 318 N.W.2d 838, 844 (Minn.1982) (holding statute not allowing time to bring claims is unconstitutional). We agree the legislature cannot pass a statute allowing a substantive remedy and adopt a procedural statute of limitations that makes the remedy meaningless by barring suit before a claim matures. *Calder,* 318 N.W.2d at 844. However, the legislature may "constitutionally abrogate a common law right, without providing a reasonable substitute if it is pursuing a permissible, legitimate legislative objective." *Tri-State Ins. Co. of Minn. v. Bouma,* 306 N.W.2d 564, 566 (Minn.1981).

 It is well established that the statute of limitations in a breach of warranty action can run before damage occurs. *See, e.g., Cargill, Inc. v. Products Eng'g Co.,* 627 F.Supp. 1492, 1498 (D.Minn.1986) (concluding cause of action for breach of contract accrues immediately on breach even though actual damages resulting therefrom occur later); *see also Den–Tal–Ez, Inc.,* 491 N.W.2d at 16 (discussing significant differences between the accrual of tort statute of limitations and the accrual of breach of warranty statute of limitations). Under these circumstances, the insurer's constitutional challenge is contrary to law.

### IV.

 The insurer argues materials submitted by the manufacturer should be stricken from the appellate record. We find nothing improper in the manufacturer's submission of the Restatement of Torts and relevant district court orders. *See Sylvester Bros. Dev. Co. v. Great Cent. Ins. Co.,* 480 N.W.2d 368, 376–77 (Minn.App.1992) (concluding law review articles and relevant case law from other jurisdictions not evidence outside record). Therefore, the insurer's motion to strike is denied.

### DECISION

The insurer's claims, arising from losses due to damage to a defective product, are recoverable in a breach of warranty action and are subject to the applicable U.C.C. statute of limitations. Moreover, the insurer's speculation regarding the manufacturer's potential concealment of the product defect is insufficient to avoid summary judgment. Because the insurer's claims are stale, the trial court properly granted summary judgment for the manufacturer.

**Affirmed; motion to strike denied.**