December 18, 1995
<u>FOR PUBLICATION</u>

IN THE SUPREME COURT OF TENNESSEE

AT NASHVILLE


| | |
|---|---|
| JACK AND NANCY RITTER, THOMAS H. AND DEBRA KITTS, AND FRED A. AND DONNA J. SYKES,<br><br>      Plaintiffs-Appellants,<br><br>v.<br><br><br><br>CUSTOM CHEMICIDES, INC.,<br><br>      Defendant-Appellee. | ( No. 01S01-9408-OT-00092<br>(<br>( On Certified Question from<br>( Sixth Circuit Court of Appeals<br>(<br>( Hon. Harry W. Wellford,<br>( Senior Circuit Judge<br>(<br>( No. 93-6066<br>(<br>(<br>(<br>(<br>(<br>( |

**FILED**

**December 4, 2000**

**Cecil Crowson, Jr.**
**Appellate Court Clerk**


| For Plaintiffs-Appellants: | For Defendant-Appellee: |
|---|---|
| Carl R. Ogle, Jr.<br>Jefferson City | D. Michael Swiney<br>Wynne C. Hall<br>Paine, Swiney and Tarwater<br>Knoxville |


# O P I N I O N

REID, J.

The Court has accepted for decision two questions of law certified by the Sixth Circuit Court of Appeals, pursuant to Rule 23, Supreme Court Rules, which questions are as follows:

(1) Whether the tort of negligent misrepresentation applies only to professionals and others who specialize in providing information as a service; and not to commercial entities or businesses which allegedly supply misleading information for the guidance of others in their business transactions; and

(2) Whether a party alleging negligent misrepresentation, in order to recover "economic losses," must be in privity of contract with the defendant.

The decision of the Court is that liability for the tort of negligent misrepresentation is not limited to "professionals"; however, the record in this case does not establish the essentials of that cause of action.

## ISSUES

For the purposes of this opinion, the facts are as alleged by the plaintiffs and as presented in the order of

the Sixth Circuit certifying the two questions to this Court: the plaintiffs grew tomatoes on their farms in Grainger County; the defendant is a California corporation; the defendant manufactured and distributed a product known as "Frostguard"; the defendant represented, in advertisements directed at the plaintiffs and other commercial tomato growers and in material delivered to the plaintiffs directly, that Frostguard would help protect tomatoes from the harmful effects of frost; the plaintiffs, in reliance upon the defendant's representations, purchased Frostguard from a retailer who was not the defendant's agent; the plaintiffs applied Frostguard to their tomato crops according to the directions provided by the defendant; and "there was extensive damage to their crops as a consequence," thereby causing economic loss to the plaintiffs.

The plaintiffs' original suit was based on breach of express and implied warranties, negligence in the manufacturing, testing, and advertising of Frostguard, and negligent misrepresentations regarding the product. The district court granted the defendant's motion for summary judgment as to all claims. The plaintiffs appealed, but only the claim of negligent misrepresentation.

The plaintiffs contend that the facts alleged

constitute the tort of negligent misrepresentation for which

they are entitled to recover damages for pecuniary or

economic losses.[1]  They rely upon <u>Bethlehem Steel Corp. v.

Ernst & Whinney</u>, 822 S.W.2d 592 (Tenn. 1991); <u>John Martin Co.

v. Morse/Diesel, Inc.</u>, 819 S.W.2d 428 (Tenn. 1991); and

Restatement (Second) of Torts, § 552 (1977).  The defendant

contends that Section 552 is not applicable to this suit for

economic loss.  It relies upon <u>Bethlehem Steel</u>, <u>John Martin

Co.</u>, and also <u>First Nat'l Bank of Louisville v. Brooks Farms</u>,

821 S.W.2d 925 (Tenn. 1991).


<u>**ANALYSIS**</u>


        This Court has recognized three distinct actions

in tort based on misrepresentation:  fraud and deceit; strict

liability under Section 402B of the Restatement (Second) of

Torts (1965); and negligent misrepresentation under Section

552 of the Restatement.  <u>See</u> <u>Jasper Aviation, Inc. v.

McCollum Aviation, Inc.</u>, 497 S.W.2d 240, 242-43 (Tenn. 1972);

---

[1]The distinction between damages for economic loss and
damages for injury to property is not always clear.  <u>See</u> Marc
A. Franklin, <u>When Worlds Collide:  Liability Theories and
Disclaimers in Defective-Product Cases</u>, 18 Stan. L. Rev. 974,
980-82 (1966).  However, that question is not before the
Court in this case since the order certifying the questions
to this Court specifically states that the plaintiffs seek
damages for economic loss only.  The terms "economic loss"
and "pecuniary loss" are synonymous for the purposes of this
opinion and include loss of profits.

<u>John Martin Co. v. Morse/Diesel, Inc.</u>, 819 S.W.2d at 433.

The complaint does not allege fraud or fraudulent misrepresentation. The distinctions between Section 402B, "Misrepresentation by Seller of Chattels to Consumer," and Section 552 of the Restatement, "Information Negligently Supplied for the Guidance of Others," will be noted; but resolution of the issues presented must be determined by the application of the provisions of Section 552 of the Restatement to the plaintiffs' allegations as reflected in the order of the Sixth Circuit Court of Appeals.

The Court stated in <u>John Martin Co.</u>, that Section 552 sets forth the components of an action for pecuniary loss based on negligent misrepresentation; Section 552 provides as follows:

### § 552. Information Negligently Supplied for the Guidance of Others.

(1) One who, in the course of his business, profession or employment, or in any other transaction in which he has a pecuniary interest, supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information.

(2) Except as stated in Subsection (3),[2] the liability stated in Subsection (1) is limited to loss suffered

(a) by the person or one of a limited group of persons for whose benefit and guidance he intends to supply the information or knows that the recipient intends to supply it; and

(b) through reliance upon it in a transaction that he intends the information to influence or knows that the recipient so intends or in a substantially similar transaction.

In exposition on Section 552, the Court stated:

By the use of this standard, liability in tort would result when, despite lack of contractual privity between the plaintiff and the defendant,

(1) the defendant is acting in the course of his business, profession or employment, or in a transaction in which he has a pecuniary (as opposed to gratuitous) interest; *and*

(2) the defendant supplies faulty information meant to guide others in their business transaction; *and*

(3) the defendant fails to exercise reasonable care in obtaining or communicating the information; *and*

---

[2]Subsection 3 is not applicable to the issues in this case.  It provides:

(3) The liability of one who is under a public duty to give the information extends to loss suffered by any of the class of persons for whose benefit the duty is created, in any of the transactions in which it is intended to protect them.

-7-

                    (4) the plaintiff justifiably relies
                    upon the information.


<u>John Martin Co.</u>, 819 S.W.2d at 431.


        The issue in <u>John Martin Co.</u> was whether a
subcontractor could make a claim in tort against a
construction manager employed by the owner, for economic loss
caused by the construction manager's negligence in furnishing
inaccurate information regarding the plans and specifications
for the subcontractor's performance.  The defendant insisted
that privity of contract was essential to finding liability.
The Court allowed the action to be maintained and stated that
a cause of action for negligent misrepresentation could be
asserted against "professionals whose business is to supply
technical information for the guidance of others" and that
"[p]rivity is not a prerequisite."  <u>Id.</u> at 433, 435 (citing
<u>Vineyard v. Timmons</u>, 486 S.W.2d 914, 920 (Tenn. App. 1972)).
In <u>Bethlehem Steel Corp. v. Ernst & Whinney</u>, decided a few
months after <u>John Martin Co.</u>, the Court held that Section 552
is the appropriate standard for determining the liability of
accountants as well as "other professionals and business
persons" in actions for negligently supplying false
information brought by parties with whom there is no privity
of contract.  <u>Bethlehem Steel Corp. v. Ernst & Whinney</u>, 822
S.W.2d at 595.

The defendant's contention that Section 552 is limited to "professionals" is not supported by the language of the section nor prior decisions of this Court. Section 552 imposes liability upon "one who, [is acting] in the course of his business, profession or employment, or in any other transaction in which he has a pecuniary interest." This language obviously includes non-professionals involved in certain business activities or transactions. In addition to a construction manager in John Martin Co. and an accountant in Bethlehem Steel Corp., prior decisions of this Court have found the rule applicable to a pest control company, Pietramale v. Dugay, 714 S.W.2d 281, 283 (Tenn. 1986); and a surveyor, Tartera v. Palumbo, 224 Tenn. 262, 453 S.W.2d 780, 784 (1970). The Court of Appeals has found Section 552 applicable to the seller of a log home kit, Stamp v. Honest Abe Log Homes, Inc., 804 S.W.2d 455, 458 (Tenn. App. 1990); a landlord, Keller v. West-Morr Investors, Ltd., 770 S.W.2d 543, 547 (Tenn. App. 1988); and a seller of real estate, Chastain v. Billings, 570 S.W.2d 866, 868 (Tenn. App. 1978). Section 552, therefore, does not limit to professionals liability for economic loss based on negligence in supplying false information for the guidance of others.

However, assuming, arguendo, that the defendant is

within the definition of "business persons"[3] governed by Section 552(l), resolution of that issue does not compel the conclusion that the plaintiffs have alleged a cause of action for economic loss under Section 552.

That section imposes liability upon proof that the defendant supplied false information and failed to exercise reasonable care in obtaining or communicating the information. The recitation of circumstances out of which the question of law arises, which accompanies the questions of law submitted by the Sixth Circuit, shows only that the plaintiffs purchased Frostguard from a retailer; their decision to purchase and use Frostguard was based upon "published advertisements" and repeated assurances from Custom Chemicides as to the "effectiveness" of the product; and the defendant's representative instructed plaintiffs as to the proper purposes, uses, and methods of application and "there was extensive damage to their crop as a consequence." There is no identification of the information supplied and no assertion that information supplied was false. Nor is there any identification of negligence committed by the defendant in obtaining or communicating information relied upon by the plaintiffs. Advertisements and even direct statements that

---

[3]<u>Bethlehem Steel Corp. v. Ernst & Whinney</u>, 822 S.W.2d 592, 595 (Tenn. 1991).

the product was "effective" does not constitute proof that the defendant supplied false information for the guidance of others.  The allegation that the product harmed the plaintiffs' crops is not an allegation that the defendant was negligent in obtaining or communicating information.  On the alleged facts, there is no basis for finding either of the essentials of Section 552(1), that the defendant supplied false information for the guidance of others in a business transaction, or that the defendant did not exercise reasonable care or competence in obtaining or communicating the information.

The Sixth Circuit noted the essential fallacy of the plaintiffs' suit with the observation, "The Ritters, unfortunately, did not maintain an action for property damage."  The circumstances as recited would state a cause of action for misrepresentation by a seller of chattels to a consumer under Section 402B.[4]  Section 402B imposes strict

_____

[4]Misrepresentation by Seller of Chattels to Consumer.

> One engaged in the business of selling chattels who, by advertising, labels or otherwise, makes to the public a misrepresentation of material fact concerning the character, or quality of a chattel sold by him is subject to liability for physical harm to a consumer of the chattel caused by justifiable reliance upon the misrepresentation, even though

liability upon a seller for misrepresentation of material facts concerning the character or quality of a chattel sold by it, even in the absence of negligence and privity of contract.  However, liability under Section 402B is limited to physical harm to a person or property and does not extend to economic loss.  Even the description of the loss reflected in the Sixth Circuit's order, "there was extensive damage to their crops," suggests physical damage to property for which recovery can be had under Section 402B.  However, since the plaintiffs sued for "economic damages resulting from the lost profits," there can be no recovery under Section 402B.

In <u>John Martin Co.</u>, the Court emphasized that Section 552 does not apply to products liability cases and distinguished the causes of action.  The Court stated:

> This is not a products liability case.  In this instance, the theory of recovery is that the defendant negligently supplied information intended for the guidance of others; the plaintiff relied upon the misrepresentation in the performance of his contracted service and experienced

_____

(a) it is not made fraudulently or negligently, and

(b) the consumer has not bought the chattel from or entered into any contractual relation with the seller.

> business losses as a result.  Many of
> those cases relied upon by the defendant
> involve claims of product liability in
> respect to design defects; the losses
> suffered were caused by defective
> products, not misguidance or
> misdirection in the performance of
> services.  The question here is not one
> of harm to person or property, but of
> economic loss.

John Martin Co., 819 S.W.2d at 431 (citation omitted).

The losses suffered by the plaintiffs in this case were

caused by a defective product, not misguidance or

misdirection in the performance of services.


Prior to the decision in First Nat'l Bank v.

Brooks Farms, 821 S.W.2d at 931, the complaint in this case

would have stated a cause of action recognized in Tennessee.

In that case, the Court abolished the action of strict

liability in tort for pecuniary damages.  Previously, in

Ford Motor Co. v. Lonon, 217 Tenn. 400, 398 S.W.2d 240

(1966), the Court had adopted proposed Section 552D of the

Restatement (Second) of Torts, which was parallel to Section

402B.  Where Section 402B allowed liability for "physical

harm," Section 552D provided liability for "pecuniary loss."

The decision in Lonon allowed recovery of pecuniary or

economic loss in situations such as that alleged in this

case.  However, Brooks Farms overruled Lonon, finding that

damages in products liability actions are limited to personal

injury or property damage.[5]  The Court essentially adopted

the proposition that, "a manufacturer does not owe a duty to

avoid causing purely economic damage."  Prairie Production,

Inc. v. Agchem Div.-Pennwalt, 514 N.E.2d 1299, 1304 (Ind. Ct.

App. 1987).[6]

_____

[5]See also Tenn. Code Ann. § 29-28-102(6). This position
is in accord with the Model Uniform Product Liability Act, 44
Fed. Reg. 62,713, which limits recovery of harm resulting
from negligent misrepresentation to the damages recognized by
the courts of the particular state, provided "the term 'harm'
does not include direct or consequential economic loss."

Academic commentators are in overwhelming accord that a
plaintiff may not use the tort of negligent misrepresentation
to recover pure economic loss resulting from a product's
failure to perform as expected.  See, e.g., William L.
Prosser and W. Page Keeton, The Law of Torts, § 101 at 708
(5th ed. 1984 & Supp. 1988); W. Page Keeton, Rights of
Disappointed Purchasers, 32 Tex. L. Rev. 1 (1953); Comment,
The Vexing Problem of Purely Economic Loss, 4 Seton Hall L.
Rev. 1681 (1966); Note, Manufacturers' Liability to Remote
Purchasers for "Economic Loss" Damages -- Tort or Contract?,
114 U. Pa. L. Rev. 539 (1966).  But see, Note, Economic Loss
in Products Liability Jurisprudence, 66 Column. L. Rev. 917
(1966).

[6]As the Supreme Court of Idaho further explains in Clark
v. International Harvester Co., 581 P.2d 784, 794 (Idaho
1978),

    The law of negligence requires the defendant to
    exercise due care to build a tractor that does not
    harm person or property.  If the defendant fails to
    exercise such due care it is of course liable for
    the resulting injury to person or property as well
    as other losses which naturally follow from that
    injury.  However, the law of negligence does not
    impose on International Harvester a duty to build a
    tractor that plows fast enough and breaks down
    infrequently enough for [a purchaser] to make a
    profit in his custom farming business.  This is not
    to say that such a duty could not arise by a
    warranty -- express or implied -- by agreement of
    the parties or by representations of the defendant,
    but the law of negligence imposes no such duty.

Tennessee has joined those jurisdictions which hold that product liability claims resulting in pure economic loss can be better resolved on theories other than negligence.[7]  A typical case is Prairie Production, in which a seed growing company sustained economic losses when a pesticide they purchased failed to control corn earworms as the label promised.  The Court of Appeals affirmed the trial court's grant of summary judgment, holding that Article 2 of the Uniform Commercial Code "governs the economic relations between buyer and seller, and the dissatisfied buyer may avail himself of the remedies fashioned by the legislature."  Id. at 1304-05 (citing Moorman Manufacturing Co. v. National

_____

[7]See Public Service Co. v. Westinghouse Electric Corp., 685 F. Supp. 1281, 1286 (D. N.H. 1988); Hart Engineering Co. v. FMC Corp., 593 F. Supp. 1471, 1483-84 (D. R.I. 1984); Sanco, Inc. v. Ford Motor Co., 579 F. Supp. 893, 896-98 (S.D. Ind. 1984), aff'd, 771 F.2d 1081 (7th Cir. 1985); Argo Welded Products, Inc. v. J. T. Ryerson Steel & Sons, Inc., 528 F. Supp. 583, 586 (E.D. Pa. 1981); Jones & Laughlin Steel Corp. v. Johns-Manville Sales Corp., 626 F.2d 280, 286-89 (3rd Cir. 1980); Arrow Leasing Corp. v. Cummins Arizona Diesel, Inc., 666 P.2d 544, 549 (Ariz. Ct. App. 1983); Kaiser Steel Corp. v. Westinghouse Electric Corp., 127 Cal. Rptr. 838, 844 (Cal. Ct. App. 1976); Cromwell Corp. v. Topkins Construction Co., 280 A.2d 730, 732 (Del. Super Ct. 1971); Vulcan Materials Co. v. Driltech, Inc., 306 S.E.2d 253, 256 (Ga. 1983); Clark v. International Harvester Co., 581 P.2d 784, 792-94 (Idaho 1978); Prairie Production, Inc. v. Agchem Div.-Pennwalt Corp., 514 N.E.2d 1299, 1304-06 (Ind. Ct. App. 1987); A. C. Hoyle Co. v. Sperry Rand Corp., 340 N.W.2d 326, 327-29 (Mich. Ct. App. 1983); National Crane Corp. v. Ohio Steel Tube Co., 332 N.W.2d 39, 44 (Neb. 1983); Local Joint Executive Board of Las Vegas v. Stern, 651 P.2d 637, 638 (Nev. 1982); Inglis v. American Motors Corp., 209 N.E.2d 583, 588 (Ohio 1965); Sunnyslope Grading, Inc. v. Miller, Bradford & Risberg, Inc., 437 N.W.2d 213, 217-18 (Wis. 1989).

<u>Tank Co.</u>, 435 N.E.2d 443 (Ill. 1982)).  <u>See</u>, <u>e.g.</u>, Tenn. Code

Ann. §§ 47-2-3l3 (express warranty), 47-2-3l4 (implied

warranty of merchantability), and 47-2-3l5 (warranty for a

particular purpose) (1992).  In Tennessee, the consumer does

not have an action in tort for economic damages under strict

liability.[8]

## <u>CONCLUSION</u>

Accordingly, the record does not support a cause

of action for negligent misrepresentation.

In response to the first certified question, the

tort of negligent misrepresentation is not limited to

professionals, however, the cause of action requires

compliance with the test set forth in <u>John Martin Co.</u>, 819

S.W.2d at 431.

---

[8]<u>See</u> <u>Sanco, Inc. v. Ford Motor Co.</u>, 579 F. Supp. 893,
897 (S.D. Ind. 1984), <u>aff'd</u>, 771 F.2d 1081 (7th Cir. 1985).

A tort action traditionally presupposes that the
plaintiff has been exposed to an unreasonable risk
of injury to his person or his property.
Qualitative defects which merely disappoint the
buyer's expectations of the product's performance
do not expose the user or his property to any risk
of physical harm.  When a product does not perform
as expected, the buyer's remedy should be governed
by the rules of contract, which traditionally
protect expectation interests.

In response to the second certified question, privity of contract is not essential to a tort action of negligent misrepresentation based on information negligently supplied for the guidance of others.

The clerk will transmit this opinion to the Sixth Circuit Court of Appeals and counsel for the parties in accordance with Rule 23, Section 8 of the Rules of the

Supreme Court.  The costs in this Court will be taxed to the plaintiffs.

_____
Reid, J.

Concur:

Anderson, C.J., Drowota, Birch,
   and White, JJ.