IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
SEPTEMBER 17, 2001 Session

**TENNESSEE FARMERS MUTUAL INSURANCE COMPANY, AS
SUBROGEE OF DWIGHT E. PASCHAL v. FORD MOTOR COMPANY**

**An Appeal from the Circuit Court for Carroll County
No. 3759,   Julian P. Guinn, Judge**

————————————

**No. W2001-00046-COA-R3-CV - Filed June 17, 2002**

————————————

This is a consolidated appeal of three products liability cases.  Three vehicles manufactured by the defendant automobile company were destroyed by spontaneous combustion, allegedly caused by a defective steering column.  No personal injuries resulted from the fires, and no other property was damaged.  The plaintiff insurance company, which insured the cars, paid the owners the value of the vehicles.  The insurance company, as subrogee for the insureds, then filed the actions below, seeking to recoup the payments from the defendant automobile manufacturer to the insureds on a theory of products liability.  The trial court dismissed the actions, holding that the economic loss doctrine precluded recovery in tort, because the product damaged only itself in each case.  The plaintiff insurance company now appeals.  The appeals were consolidated for purposes of our review.  We affirm the trial court in all respects, finding that the economic loss doctrine precludes recovery in these cases.

**Tenn. R. Civ. P. 3; Judgment of the Circuit Court is Affirmed**

HOLLY K. LILLARD, J., delivered the opinion of the court, in which ALAN E. HIGHERS, J., and DAVID R. FARMER, J., joined.

Stephen D. Jackson, Jackson, Tennessee, for the appellant Tennessee Farmers Mutual Insurance Company.

Jonathan Cole and Sandi L. Pack, Nashville, Tennessee, for the appellee, Ford Motor Company.

**OPINION**

This is a consolidated appeal of three products liability cases. Plaintiff/Appellant Tennessee Farmers Mutual Insurance Company ("Tennessee Farmers") provided automobile insurance to the three insureds involved in these cases: Dwight E. Paschal, Bill Craig, and Billy M. Crum.[1] All of these insureds owned vehicles manufactured by the Defendant/Appellee, Ford Motor Company ("Ford").

At different times in 1996 and 1998, the Ford vehicles owned by the insureds spontaneously ignited, allegedly due to a malfunction or defect in the vehicles' steering columns. Each vehicle was totally destroyed by the fire. It is undisputed that none of the fires caused any personal injury or damage to property other than damage to the vehicle itself. Tennessee Farmers paid each insured the value of his vehicle and is subrogated to the rights of each insured as authorized in each individual policy and by Tennessee Code Annotated § 56-7-1204.

Tennessee Farmers filed a lawsuit against Ford as subrogee of each of the insureds under legal theories of negligence and strict liability in tort.[2] In the cases involving Paschal and Craig, Ford responded by filing a motion to dismiss; in the case relating to Crum, Ford filed a motion for summary judgment. In each case, Ford asserted that the economic loss doctrine, as adopted by the Tennessee Supreme Court in *Ritter v. Custom Chemicides*, 912 S.W.2d 128 (Tenn. 1995), restricted the plaintiff's recovery to contract damages, since the product at issue damaged only itself. On December 8, 1998, the trial court entered orders granting the two motions to dismiss in the Paschal and Craig cases, and on November 29, 2000, the same court entered an order granting the motion for summary judgment in the Crum case. Tennessee Farmers appealed the trial court's decision in each case. Those appeals have been consolidated for purposes of our review.

On appeal, Tennessee Farmers argues that the economic loss doctrine does not prevent its recovery in these cases because (1) the economic loss doctrine does not apply to a products liability case; (2) the doctrine does not apply to a consumer transaction; and (3) the destruction of each vehicle constituted "property damage," rather than economic loss. Each issue will be addressed in turn.

The trial court's grant of a motion to dismiss is reviewed by taking all the allegations of fact in the plaintiff's complaint as true, and construing the facts liberally in favor of the plaintiff. *Stein v. Davidson Hotel Co.*, 945 S.W.2d 714, 716 (Tenn. 1997). In this case, the only issues on appeal

---

[1] This appeal originally included two other lawsuits brought by Tennessee Farmers as subrogee for Ron D. Jackson and Jerry L. Edwards. On July 19, 2001, however, the parties entered a joint stipulation for the dismissal of those two actions.

[2] In the case relating to Crum, Tennessee Farmers included a claim based on breach of implied warranty of merchantability. That claim was dismissed as being untimely, and Tennessee Farmers does not challenge that aspect of the trial court's decision in this case.

are questions of law; consequently, we review the trial court's legal conclusions de novo, with no presumption of correctness. *Id.* We also review the trial court's grant of summary judgment de novo, with no presumption of correctness. *Warren v. Estate of Kirk*, 954 S.W.2d 722, 723 (Tenn. 1997).

The seminal case applying the economic loss doctrine is *East River Steam Ship Corp. v. Transamerica Delaval, Inc.*, 476 U.S. 858 (1986), decided under admiralty law. In *East River*, a shipbuilder had plans to build four oil-transporting supertanker ships. It contracted with the defendant turbine manufacturer to design, manufacture, and supervise the installation of the turbines, which are the ships' main propulsion units.[3] *East River*, 476 U.S. at 859. When each ship was completed, it was chartered to a chartering company, which assumed the cost of any repairs to the ships. Within months after the ships had set sail, each turbine malfunctioned and caused damage to itself. Each of the ships were repaired and resumed travel. *Id.* at 860-61. The plaintiff chartering company sued the defendant turbine manufacturer, alleging five counts of tortious conduct and claiming damages for the cost to repair the ships and for income lost while the ships were out of service. Though the initial complaint listed claims based on breach of contract and warranty, these claims were eliminated as untimely. *Id.* at 861. Thus, the remaining complaint by the plaintiff chartering company was based entirely upon tort theories of recovery.

The district court granted summary judgment in favor of the defendant turbine manufacturer, and the Third Circuit Court of Appeals affirmed. The Supreme Court affirmed the decision of the Third Circuit, holding that "a manufacturer in a commercial relationship has no duty under either a negligence or strict products-liability theory to prevent a product from injuring itself."[4] *Id.* at 871. The Court reasoned that, when a product injures itself, the plaintiff suffers only economic loss. "[T]he commercial user stands to lose the value of the product, risks the displeasure of its customers who find that the product does not meet their needs, or . . . experiences increased costs in performing a service. *Losses like these can be insured*." *Id.* (emphasis added). The Court then opined that "[d]amage to a product itself is most naturally understood as a warranty claim," because "[t]he maintenance of product value and quality is precisely the purpose of express and implied warranties." *Id.* at 872. The Court stated that contract law is "well suited" to a commercial controversy in which the product injures only itself because warranties can be negotiated, and the price of the product may be reduced based on the fact that it does not have a warranty. *Id.* at 872-73. Also, a warranty has a built-in limitation on liability, whereas a tort action could involve unlimited liability. *Id.* at 874. Thus, in *East River*, because the turbines injured only themselves, a strict products liability cause of action was unavailable to the plaintiffs. *Id.* at 875.

---

[3]Each supertanker weighed 225,000 tons and cost $125 million. *East River*, 476 U.S. at 859.

[4]Prior to *East River*, the circuits were split on whether injury to a product itself could serve as the basis for an action in tort, or whether a plaintiff's cause of action was limited to an action for breach of contract, i.e., breach of warranty. *East River*, 476 U.S. at 868-70.

Tennessee adopted the economic loss doctrine in ***Ritter v. Custom Chemicides, Inc.***, 912 S.W.2d 128 (Tenn. 1995). In ***Ritter***, the plaintiffs were commercial tomato growers who used Frostguard, a product intended to help protect crops from the harmful effects of frost. Frostguard was manufactured by the defendant chemical company. However, Frostguard did not protect the plaintiffs' tomato crops, and they suffered extensive frost damage. This resulted in economic loss to the plaintiffs. ***Ritter***, 912 S.W.2d at 129. The plaintiff tomato growers sued the defendant chemical company under a theory of negligent misrepresentation based on the defendant's published advertisements and oral assurances that Frostguard would be "effective." The tomato growers sued only for economic damages resulting from lost profits. The Tennessee Supreme Court held that the plaintiffs could not maintain an action based on negligent misrepresentation, concluding that the alleged injury was caused by a defective product, not a misrepresentation. ***Id.*** It stated that "Tennessee has joined those jurisdictions which hold that product liability claims resulting in pure economic loss can be better resolved on theories other than negligence. . . . In Tennessee, the consumer does not have an action in tort for economic damages under strict liability." ***Id.*** at 133.

Tennessee Farmers first argues that the reasoning in ***Ritter*** does not apply in a products liability case. However, the ***Ritter*** Court stated that "product liability claims resulting in pure economic loss can be better resolved on theories other than negligence." ***Id.*** Thus, ***Ritter*** makes it clear that the economic loss doctrine applies to a products liability case. Moreover, ***East River*** was a products liability case, albeit under maritime law. In ***East River***, the United States Supreme Court specifically limited the plaintiffs' claims to breach of contract when they alleged only economic loss. Therefore, based on the reasoning in both ***Ritter*** and ***East River***, we must conclude that the economic loss doctrine applies in a products liability case.

Tennessee Farmers next argues that the economic loss doctrine should not apply to a case involving a consumer transaction. Tennessee Farmers asserts that the reasoning in both ***Ritter*** and ***East River*** applies only where the purchaser of the product intends to use it for a commercial purpose, and that the reasoning in those cases would not apply when the purchaser of the defective product is a consumer. Tennessee Farmers notes that the United States Supreme Court stated in ***East River*** that, "[s]ince a ***commercial*** situation generally does not involve large disparities in bargaining power, we see no reason to intrude into the parties' allocation of the risk." ***East River***, 476 U.S. at 872 (emphasis added). The ***East River*** Court also stated that "a manufacturer in a ***commercial*** relationship has no duty under either negligence or strict products liability theory to prevent a product from injuring itself." ***Id.*** at 871 (emphasis added). Tennessee Farmers claims that when the purchaser of a defective product is a consumer, there is no risk that the purchaser's customer will be displeased, no risk of increased costs in performing a service, and no risk of lost profits due to a defective product. Rather, the only loss would occur to the product itself, which Tennessee Farmers claims should be considered property damage. In support, Tennessee Farmers cites a decision from Maryland, in which the Maryland court held that the rule in ***East River*** did not apply

to consumer transactions. *See Sherman v. Johnson & Towers Baltimore, Inc.*, 760 F. Supp. 499 (D. Md. 1990).[5]

From our review of the pertinent case law, it is clear that a majority of cases addressing the issue have concluded that no legal distinction should be made between an action brought by a consumer and an action involving a commercial transaction. *See Somerset Marine, Inc. v. Forespar Prods. Corp.*, 876 F. Supp. 1114, 1115 (D. Cal. 1994); *Karshan v. Mattituck Inlet Marina & Shipyard, Inc.*, 785 F. Supp. 363, 365-66 (E.D.N.Y. 1992); *Sisson v. Hatteras Yachts, Inc.*, No. 87 C 0652, 1991 U.S. Dist. LEXIS 4020, at *4-*5 (N.D. Ill. April 2, 1991); *Lewinter v. Genmar Indus.*, 32 Cal. Rptr. 2d 305, 308 (1994); *State Farm Mutual Auto. Ins. Co. v. Ford Motor Co.*, 572 N.W.2d 321, 324 (Minn. Ct. App. 1997). The court in *Somerset Marine* explained that, while *East River* could be read as limiting its holding to cases involving commercial transactions, several courts have rejected that distinction because of the *East River* Court's concern with keeping contract and products liability claims separate. *Somerset Marine*, 876 F. Supp. at 1115. The *Somerset Marine* court also noted that an action based on damage to the product itself remains "the essence of a warranty action," whether or not the product was used "commercially." *See Karshan*, 785 F. Supp. at 366, *cited in Somerset Marine*, 876 F. Supp. at 1115. Some cases focus on the availability of insurance and the fact that, with respect to boats, non-commercial vessels are ordinarily insured, as are commercial vessels. *See Somerset Marine*, 876 F. Supp. at 1115. Thus, the *Somerset Marine* court followed the majority of jurisdictions and held that *East River* applies in a non-commercial context. *Id.* at 1116.

While the Supreme Court in *East River* applied the economic loss doctrine to a commercial transaction, the reasoning employed in *East River* applies with equal force to cases involving consumer transactions. The *East River* Court expressed concern that, if a products liability claim were permitted, "contract law would drown in a sea of tort." *East River*, 476 U.S. at 866. This concern would apply whether a consumer or commercial transaction is involved. Consumers are "perfectly capable of negotiating the terms" of an automobile purchase. *See Somerset Marine*, 876 F. Supp. at 1115. In addition, automobiles purchased by consumers are typically insured, as are commercial ships and vehicles. Moreover, it must be noted that the conclusion in *Sherman,* on which Tennessee Farmers relies, has been called into question by a subsequent panel of that court. *See Reliance Ins. Co. v. Carver Boat Corp.*, No. WMN-96-194, 1997 U.S. Dist. LEXIS 16658, *4-*6 (D. Md. May 29, 1997) (applying the rule in *East River* in a non-commercial context). Overall, we must agree with the majority view, and therefore conclude that the economic loss doctrine as described in *East River* applies in cases involving consumer transactions as well as commercial transactions.

---

[5]Tennessee Farmers also cited *Utah Int'l, Inc. v. Caterpillar Tractor Co.*, 775 P.2d 741 (N.M. Ct. App. 1989), for the same proposition. That case, however, involved a commercial transaction, and the court expressly reserved judgment on whether the rule in *East River* would apply to non-commercial transactions. *See Utah Int'l*, 775 P.2d at 744.

Finally, Tennessee Farmers argues that, even if this court finds the economic loss doctrine to be applicable in the instant cases, the doctrine would not bar Tennessee Farmers' recovery because the total loss of the vehicles constitutes "property damage" rather than economic loss, because the fires were caused by a malfunction of only one component part. Tennessee Farmers asserts that economic losses include indirect expenses which flow from damage to property, such as loss of use, loss of value, cost of replacement parts, and loss of profits. *See McCrary v. Kelly Technical Coatings, Inc.*, 1985 Tenn. App. LEXIS 3133 (Tenn. Ct. App. Aug. 28, 1985). In contrast, Tennessee Farmers maintains, property damages are direct costs incurred from damage to the property itself. Because it seeks recovery only for damage to the property itself, Tennessee Farmers argues that the economic loss doctrine should not preclude it from bringing an action for strict liability in tort.

In response, Ford asserts that the Supreme Court in *East River* rejected the argument that injury to a component part constitutes damage to property other than the product itself. Ford points out that the *East River* Court held that, because the turbines were supplied as an integrated package, each package should be regarded as a single unit. *East River*, 476 U.S. at 867. When the unit is damaged by a defective component part, the result is economic loss. Quoting an Alaska case, the *East River* Court reasoned that "[s]ince all but the very simplest of machines have component parts, [a contrary] holding would require a finding of 'property damage' in virtually every case where a product damages itself. Such a holding would eliminate the distinction between warranty and strict products liability." *Id.* (quoting *Northern Power & Eng'g Corp. v. Caterpillar Tractor Co.*, 623 P.2d 324, 330 (Alaska 1981)). Ford notes that the United States Supreme Court in *Saratoga Fishing Co. v. J. M. Martinac & Co.*, 520 U.S. 875 (1997), reiterated that, when a manufacturer places an item in the stream of commerce by selling it to an initial user, that item as a whole is the "product itself." Damage that is caused to the "product itself" by a defective component part constitutes economic loss for which recovery in tort is not allowed. *Saratoga Fishing*, 520 U.S. at 879-80.

In *Saratoga Fishing*, a fishing vessel was destroyed by a defectively designed hydraulic system. *Id.* at 877. The question in that case was whether fishing nets and other spare parts that had been added to the vessel constituted "other property" or whether they were part of the "product itself." *Id.* In addressing that issue, the Court determined that the entire vessel was, in fact, the "product itself" because the vessel as a whole was placed in the stream of commerce when it was sold to the initial user. *Id.* at 879. Because the nets and other parts had been added after the product had been placed in the stream of commerce, those items were considered to be "other property," and the plaintiffs could recover in tort for damage to those items. *Id.* at 884-85. The Court reasoned that the parties can contract for appropriate sharing of the risk of harm through warranty contracts when the product is introduced into commerce. *Id.* at 882. Though a reseller of a product might also offer a warranty, such is not ordinary business practice. *Id.*

The reasoning in *Saratoga Fishing* was applied in a case decided on facts similar to those in the instant case, *Radford v. Daimler Chrysler Corp.*, 168 F. Supp. 2d 751 (N.D. Ohio 2001). In *Radford*, the plaintiff owned a Dodge Stratus automobile that spontaneously ignited and was totally destroyed. The fire was caused by an allegedly defective instrument panel. *Radford*, 168 F. Supp.

2d at 752. The district court dismissed the plaintiff's products liability action, based on the economic loss doctrine. The court held that "[b]ecause the destruction of the car is damage to the allegedly defective product, not other property, no claim exists under the [Ohio] Products Liability Act." *Id.* at 753. In reaching that conclusion, the **Radford** court relied on the decisions in **East River** and **Saratoga Fishing**. The **Radford** court analogized the facts in that case to the facts in **Saratoga Fishing**, stating that "[i]n **Saratoga Fishing**, it was an entire ship, not just the defective hydraulic system, which was the product at issue." *Id.* Thus, because the only damage was to the "product itself," Radford could not recover under a theory of products liability.

Other courts considering the issue have determined that a vehicle constitutes the "product itself" when a defective component part destroys the entire vehicle. *See, e.g., Dairyland Ins. Co. v. General Motors Corp.*, 549 So. 2d 44, 46 (Ala. 1989); *Progressive Ins. Co. v. General Motors Corp.*, 749 N.E.2d 484, 487-88 (Ind. 2001); *State Farm Mutual Auto. Ins. Co. v. Ford Motor Co.*, 572 N.W.2d 321, 325 (Minn. Ct. App. 1997); *Jones v. General Motors Corp.*, 631 A.2d 665 (Pa. Super. Ct. 1993). We are persuaded by the reasoning in these cases. We conclude that each vehicle involved in the instant appeal, destroyed by the spontaneous combustion of a component part, constituted the "product itself" for the purpose of determining whether the insureds suffered only economic loss. Consequently, the economic loss doctrine limits the plaintiff's recovery to an action based in contract, and it cannot maintain an action in tort. Thus, we affirm the trial court's decision to dismiss these cases based on the economic loss doctrine.

Accordingly, we affirm the decision of the trial court in each of the three consolidated cases. Costs are to be taxed to the appellant, Tennessee Farmers Mutual Insurance Company, and its surety, for which execution may issue, if necessary.

_____
HOLLY K. LILLARD, JUDGE