**HYUNDAI MOTOR AMERICA, INC., Appellant–Defendant,**

v.

**Sandra GOODIN, Appellee–Plaintiff.**

No. 82A05–0303–CV–155.

Court of Appeals of Indiana.

March 10, 2004.

Robert B. Thornburg, Locke Reynolds, LLP, Indianapolis, IN, Attorney for Appellant.

John D. Barker, Krohn & Moss, Ltd. Chicago, IL, Attorney for Appellee.

## OPINION

BARNES, Judge.

### Case Summary[1]

Hyundai Motor America appeals a judgment against it obtained by one of its customers, Sandra Goodin. We reverse.

### Issues

The issues before us are:

I. whether Hyundai is estopped from asserting that Goodin could not recover economic damages from it for breach of an implied warranty of merchantability because Goodin was not in privity with Hyundai; and

II. if Hyundai is not so estopped, whether Goodin may recover from Hyundai where the traditional concept of privity is lacking.

### Facts

On November 18, 2000, Goodin contracted to purchase a new 2000 Hyundai Sonata from AutoChoice Hyundai in Evansville. This was Goodin's third Hyundai. The Sonata came with a "bumper-to-bumper"

---

1. Goodin's motion for oral argument is denied.

five-year/60,000 mile express warranty from Hyundai that covered all components in the car with a few exceptions.

Over the next several months, Goodin brought the Sonata in to a dealership in Jeffersonville for service eight times complaining of brake-related problems. Hyundai paid for these service visits under its express warranty. As of August 24, 2001, Goodin's last visit to the dealership for service, she had driven the Sonata 32,865 miles.

On September 19, 2001, Goodin contacted Hyundai and asked them to repurchase the Sonata because of the alleged problems with the brakes. After Hyundai refused to do so, Goodin sued Hyundai on November 13, 2001, alleging breach of express warranty, breach of implied warranty, and revocation of acceptance. Hyundai filed its answer on January 17, 2002, in which it did not mention privity. The trial court set a trial date of December 2, 2002.

On November 15, 2002, during an unrecorded pre-trial conference to discuss jury instructions, Hyundai objected to Goodin's proposed jury instructions regarding implied warranties on the ground that she could not maintain an implied warranty of merchantability action against Hyundai due to lack of privity between her and Hyundai. The trial court overruled the objections, which were restated during another unrecorded conference during trial, and instructed the jury on implied warranty principles.

On December 3, 2002, the jury returned a verdict finding Hyundai had not breached its express warranty, but had breached an implied warranty of merchantability, and awarded Goodin damages of $3000. Before adjourning, the trial court denied Hyundai's motion to set aside the verdict because of the privity issue and entered judgment on the verdict. However, on December 4, 2002, the trial court reconsidered and vacated the judgment against Hyundai because there was no privity between Hyundai and Goodin. On February 6, 2003, the trial court again reconsidered, on Goodin's motion, and reinstated the judgment, finding that Hyundai was estopped from arguing lack of privity as a basis for setting aside the verdict. Hyundai now appeals.

## Analysis

### I. Estoppel

Goodin strongly urges us to affirm the trial court's decision that Hyundai was estopped from moving to set aside the jury verdict in Goodin's favor on the implied warranty claim by arguing her lack of privity of contract with Hyundai. Goodin contends that the alleged absence of privity between her and Hyundai was an affirmative defense that Hyundai was required to plead in its answer to Goodin's complaint. She also points out that Hyundai never filed any motions seeking to dispose of Goodin's implied warranty claim until after the jury returned its verdict in her favor on that claim.

Indiana Trial Rule 8(C) provides that "[a] responsive pleading shall set forth affirmatively and carry the burden of proving" various expressly stated affirmative defenses, "and any other matter constituting an avoidance, matter of abatement, or affirmative defense." Failure to raise an affirmative defense in a responsive pleading generally results in waiver of that defense at trial, unless it is tried by the express or implied consent of the parties. *Van Bibber Homes Sales v. Marlow,* 778 N.E.2d 852, 859 (Ind.Ct.App.2002), *trans. denied* (2003).

Privity, or the lack thereof, is not expressly listed as an affirmative defense under Rule 8(C); therefore, we must determine whether it is "any other matter

constituting an avoidance, matter of abatement, or affirmative defense" that Hyundai was required to plead in its answer. The determination of whether a defense is affirmative depends upon whether it controverts an element of a plaintiff's prima facie case, which is not an affirmative defense, or raises matters outside the scope of the prima facie case, which is. *See Paint Shuttle, Inc. v. Continental Cas. Co.*, 733 N.E.2d 513, 524 (Ind.Ct.App.2000), *trans. denied* (2001). An affirmative defense is one upon which the defendant bears the burden of proof and which, in effect, admits the essential allegations of the complaint but asserts additional matter barring relief. *Id.*

■ We conclude, after reviewing Indiana case law, that the existence of privity is an element of a consumer's prima facie case when he or she seeks recovery from a remote manufacturer under an implied warranty of merchantability. This court has said that in such a case, *"privity must be shown,* or facts must be present" that establish one of the recognized exceptions to the privity rule. *Candlelight Homes, Inc. v. Zornes*, 414 N.E.2d 980, 982 (Ind.Ct.App.1981) (emphasis added). The clear import of this statement is that a plaintiff bears the burden of demonstrating privity with a remote manufacturer, or an exception to the privity rule, before he or she may claim recovery under an implied warranty of merchantability. Thus, any claim by Hyundai that privity was lacking in this case went to attacking Goodin's prima facie case with respect to the implied warranty claim and did not raise issues outside of her prima facie case. As such, Hyundai was not required to list lack

of privity as an affirmative defense in its answer to Goodin's complaint.[2]

■ Goodin also contends that Hyundai was required either to move to dismiss the implied warranty count of her complaint or seek summary judgment on that issue. To the extent Goodin seems to argue that Hyundai was required to file an Indiana Trial Rule 12(B) motion to dismiss because lack of privity was an affirmative defense, we have already concluded that lack of privity is not such a defense. As for Hyundai's failure to move for partial summary judgment on the implied warranty issue, Goodin cites no authority for the proposition that a party's failure to move for summary judgment on an issue before trial means that the issue is waived. Indiana Trial Rule 56(B) states that "[a] party against whom a claim ... is asserted ... *may,* at any time, move ... for a summary judgment in his favor as to all or any part thereof." (Emphasis added). Clearly, a party is allowed to move for summary judgment if it feels the law and facts justify such a motion, but it certainly does not have to do so.

Finally, Goodin argues in her brief, "at no time during the litigation of this matter did Hyundai raise the issue of lack of privity until after the jury rendered its verdict in favor of Goodin." Appellee's Br. p. 4. This claim, which is made several times throughout the brief, does not accurately reflect the record. Specifically, on November 15, 2002, the trial court held a conference in its chambers to discuss jury instructions. This conference was not recorded; however, the court's chronological case summary ("CCS") indicates that it decided to give instructions to the jury

---

**2.** Goodin makes much of the fact that counsel for Hyundai has litigated many other breach of warranty cases for automobile manufacturers and has often listed lack of privity as an affirmative defense in the answers in those cases. However, we fail to see how this choice of strategy by counsel in other cases is relevant to whether Hyundai was legally *required* to plead lack of privity in this case.

during trial relating to implied warranties, over Hyundai's objections. The CCS does not reflect the nature of these objections. Because of this, Hyundai filed a request for a certified statement of what transpired at the November 15 conference, pursuant to Indiana Appellate Rule 31, at the same time that it filed its notice of appeal. The trial court granted Hyundai's request, meaning that it accepted the affidavit of Hyundai's counsel that he had specifically objected at the November 15 conference to the giving of any jury instructions regarding implied warranties on the basis that there was a lack of privity between Goodin and Hyundai. At the same time, the trial court denied Goodin's competing motion for certification in which she argued that privity was not mentioned at the November 15 conference.

Additionally, during the trial the court held another unrecorded conference in chambers to discuss final instructions. However, Hyundai's successful motion for a certified statement of the evidence also indicates that it renewed its objections to the giving of any implied warranty instructions on the basis that privity between it and Goodin was not established. A trial court's certification of the evidence becomes part of the clerk's record for purposes of appeal. Ind. Appellate Rule 31(C). Therefore, contrary to Goodin's argument, the record indicates that Hyundai did raise the issue of privity before trial

and before the jury retired to deliberate, and it did in fact attempt to keep the implied warranty issue out of the hands of the jury. We also observe that when Hyundai moved to set aside the jury's verdict on the implied warranty claim, Goodin's counsel stated that he "actually addressed the arguments of Privity" in the trial brief that he had previously submitted. Tr. p. 421. Thus, it seems to us, again contrary to Goodin's claims, that she was aware that Hyundai might attempt to claim lack of privity as a barrier to her recovering on an implied warranty theory.[3]

Counsel for Hyundai walked a fine line here by failing to expressly indicate until a little over two weeks before trial, at the earliest, that he would attack Goodin's implied warranty claim based on lack of privity.[4] On the other hand, he also never stipulated or stated that he would *not* litigate that issue. *Cf. Apple v. Kile*, 457 N.E.2d 254, 256–57 (Ind.Ct.App.1983) (holding party could not rely on adverse possession theory in quiet title action where party had previously stated specifically that he would not rely on such a theory). There may be reasons why an attorney might want to file a dispositive motion on an issue in advance of trial if there is a sound basis for making such a motion. However, we discern no requirement that such a motion be made.

3. We should note that although it may be more convenient to conduct in-chambers conferences regarding issues such as jury instructions, it may be advisable for the trial court's post-conference orders and CCS entries to more clearly reflect the nature of any objections raised during such conferences, or that such objections be specifically mentioned in court during recorded proceedings, to avoid any possible confusion in future cases.

4. Counsel's amended "List of Contentions" filed with the trial court on October 16, 2002, listed nine separate issues on which Hyundai

intended to challenge Goodin's express and implied warranty claims, none of which involved privity. There is no indication in the record, however, that this list was ever reduced to a binding pre-trial order narrowing the issues that would be litigated at trial. *See Fruehauf Trailer Div. v. Thornton*, 174 Ind. App. 1, 17–18, 366 N.E.2d 21, 33 (1977) (holding parties were not bound by agreements reached at pre-trial conference where no Indiana Trial Rule 16 pre-trial order relating to that conference was filed before the commencement of trial).

Hyundai's claim of lack of privity was not an affirmative defense that it was required to raise in its answer or by way of a Rule 12(B) motion to dismiss. Nor does the fact that Hyundai failed to file a summary judgment motion on this issue mean it waived the privity issue. Finally, the record does not support Goodin's argument that Hyundai never mentioned the issue of privity until after the jury returned a verdict in her favor. There is no basis for concluding Hyundai was estopped from arguing that a lack of privity between it and Goodin precluded her from succeeding on an implied warranty claim against Hyundai.

## II. Privity

■■ Goodin failed to establish to the jury's satisfaction that Hyundai breached its express warranty on the Sonata but did succeed on her implied warranty of merchantability claim. We now turn to whether Hyundai may be held liable to Goodin under an implied warranty of merchantability where traditional, vertical privity of contract between them is lacking. Vertical privity describes the relationship that exists between parties in a distributive chain, i.e., between a manufacturer, wholesaler, retailer, and ultimate buyer. *Rheem Mfg. Co. v. Phelps Heating & Air,* 714 N.E.2d 1218, 1228 n. 8 (Ind.Ct.App.1999), *aff'd in relevant part,* 746 N.E.2d 941, 956 (Ind. 2001). A buyer within this chain that did not buy goods directly from the named defendant is not in privity with that defendant. *Id.*

■ The first issue we address is the scope of the federal Magnuson–Moss Warranty Act, which Goodin claimed as the basis for her suit. *See* 15 U.S.C. § 2301 et seq. That Act provides a cause of action for consumers against suppliers of goods who breach express or implied warranties and limits the extent to which manufacturers may disclaim or modify implied warranties when they give an express warranty. The central issue regarding Magnuson–Moss for purposes of this case is whether it disposes with or trumps state law privity requirements regarding implied warranties. Goodin essentially argues that when a manufacturer provides a Magnuson–Moss express warranty with a product, as Hyundai did here, traditional privity of contract between the consumer and manufacturer is not required to sue the manufacturer for breach of an implied warranty of merchantability.

Neither the United States Supreme Court nor the Seventh Circuit Court of Appeals have addressed this question of statutory interpretation, but several federal courts have done so. The Second Circuit addressed the issue in great detail in *Abraham v. Volkswagen of America, Inc.,* 795 F.2d 238 (2nd Cir.1986). That case involved a multi-jurisdiction class action suit brought under Magnuson–Moss by owners of Volkswagen Rabbits for alleged breaches of express warranties and implied warranties of merchantability. The district court concluded that state law privity rules were applicable to implied warranty claims brought under Magnuson–Moss, thus effectively dismissing implied warranty claims by plaintiffs residing in states where the law required privity to enforce an implied warranty. *Id.* at 247. The Second Circuit affirmed this ruling, concluding "Congress did not intend to supplant state law with regard to privity in the case of implied warranties." *Id.* at 249.[5]

---

**5.** The court noted that Indiana was among those states requiring privity. *Abraham,* 795 F.2d at 249 n. 12.

In reaching this conclusion, the court engaged in extensive analysis of the language of Magnuson–Moss and the legislative history behind it. The court stated the overall purpose of Magnuson–Moss, which was to curtail the common, misleading practice of manufacturers giving limited express warranties while simultaneously disclaiming implied warranties arising under the Uniform Commercial Code and state law that would have offered the consumer greater protection than the express warranty. *Id.* at 247. It also noted the language of 15 U.S.C. § 2301(7), which provides: "The term 'implied warranty' means an implied warranty arising under State law (as modified by sections 2308 and 2304(a) of this title) in connection with the sale by a supplier of a consumer product." The modifications referred to in sections 2308 and 2304(a) do not mention privity. The court also acknowledged certain language in Magnuson–Moss that arguably conflicts with Section 2301(7), including Section 2308(a), which states that "suppliers" of goods may not disclaim "any implied warranty to a consumer" if they make an express warranty to the consumer. 15 U.S.C. § 2308(a).

Despite this possible conflict, the court was convinced that "state law, including privity requirements, governs implied warranties" except where modified in matters not relevant to privity. *Abraham,* 795 F.2d at 249. Without going into the full detail of the court's analysis, the strongest indicator of legislative intent behind Magnuson–Moss with respect to implied warranties was the following Senate Report statement accompanying the bill that included what eventually became Section 2308:

It is not the intent of the Committee to alter in any way the manner in which implied warranties are created under the Uniform Commercial Code. For instance, an implied warranty of fitness for particular purpose which might be created by an installing supplier is not, in many instances, enforceable by the consumer against the manufacturing supplier. The Committee does not intend to alter currently existing state law on these subjects.

*Id.* at 248. (quoting S.Rep. No. 151, 93d Cong., 1st Sess. at 21 (1973)). The *Abraham* court acknowledged that this statement refers to implied warranties of fitness for a particular purpose, not implied warranties of merchantability, but found the general proposition of the statement applied to both types of warranties. *Id.* at 249.

In other words, that part of Magnuson–Moss forbidding manufacturers from disclaiming implied warranties if they give an express warranty only extends to implied warranties under which they would have been liable to the consumer according to state law. If a manufacturer would not be liable to the consumer under an implied warranty theory because of state law privity requirements, then there is nothing that the manufacturer could improperly disclaim. *See also Carlson v. General Motors Corp.,* 883 F.2d 287, 291 (4th Cir.1989); *Walsh v. Ford Motor Co.,* 588 F.Supp. 1513, 1525–26 (D.D.C.1984). Goodin does not cite to any reported federal court decision that has reached an opposite conclusion.[6] We are persuaded by the *Abraham*

---

6. Goodin does cite to *Szajna v. General Motors Corp.,* 115 Ill.2d 294, 104 Ill.Dec. 898, 503 N.E.2d 760 (1986). There, the Illinois Supreme Court reconciled 15 U.S.C. §§ 2301(7) and 2308 by concluding that when a manufacturer supplies an express Magnuson–Moss warranty to a consumer, there is sufficient privity between the manufacturer and consumer to give rise to an implied warranty of merchantability. *Id.* at 769. The court reached this conclusion in the absence of detailed statutory analysis of the question

court's analysis, and we ourselves have previously stated in a slightly different context that Magnuson–Moss relies "on state law in defining the contours of implied warranties." *Hahn v. Ford Motor Co., Inc.,* 434 N.E.2d 943, 952 (Ind.Ct.App. 1982). Therefore, we conclude that the implied warranty privity analysis in this case is not impacted by the fact that Goodin received a Magnuson–Moss express warranty from Hyundai.

▪ Turning now to Indiana law, Indiana Code Section 26–1–2–314 provides: "Unless excluded or modified (IC 26–1–2–316), a warranty that the goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind." It is beyond dispute that some form of privity between manufacturer and consumer is required to maintain a cause of action for breach of an implied warranty of merchantability under this section of Indiana's version of the Uniform Commercial Code when only economic damages are sought.[7] We set forth the general rule in *Richards v. Goerg Boat & Motors, Inc.,* 179 Ind.App. 102, 112, 384 N.E.2d 1084, 1092 (1979) (internal citations omitted):

> Generally privity extends to the parties to the contract of sale. It relates to the bargained for expectations of the buyer and seller. Accordingly, when the cause of action arises out of economic loss related to the loss of the bargain or profits and consequential damages related thereto, the bargained for expectations of buyer and seller are relevant and privity between them is still required. Implied warranties of merchantability and fitness for a particular use, as they relate to economic loss from the bargain, cannot then ordinarily be sustained between the buyer and a remote manufacturer.

*See also B & B Paint Corp. v. Shrock Mfg., Inc.,* 568 N.E.2d 1017, 1019 (Ind.Ct. App.1991), *trans. denied; Prairie Production, Inc. v. Agchem Division–Pennwalt Corp.,* 514 N.E.2d 1299, 1301 (Ind.Ct.App. 1987); *Dutton v. International Harvester Co.,* 504 N.E.2d 313, 316 (Ind.Ct.App. 1987), *trans. denied; Whittaker v. Federal Cartridge Corp.,* 466 N.E.2d 480, 481 n. 2 (Ind.Ct.App.1984); *Candlelight Homes, Inc. v. Zornes,* 414 N.E.2d 980, 981–82 (Ind.Ct.App.1981); *Lane v. Barringer,* 407 N.E.2d 1173, 1175 (Ind.Ct.App.1980) (specifically noting "the abrogation of the privity requirement in tort law has not eliminated the privity requirement when the cause of action sounds in contract for breach of warranty.")

▪ To the extent Goodin asks us today "to completely dispose of the antiquated concept of requiring privity in implied warranty causes of action," we are not in a position to do so, given the precedent of the eight cases just mentioned and our supreme court's approval of them. Appellee's Br. p. 38. That court has endorsed the holdings reflected in the above eight

and instead adopted the suggested result of a law review article without indicating what the reasoning was behind that result. *Id.* We are more persuaded by the *Abraham* court's detailed analysis, and by the fact that it was a federal court interpreting a federal statute, in concluding that the provision of a Magnuson–Moss express warranty does not alter state law privity requirements with respect to implied warranties. *See also Kutzle v. Thor Industries, Inc.,* 2003 WL 21654260 *6 (N.D.Ill. 2003) (observing that the "overwhelming weight of authority" in the Northern District of Illinois has rejected *Szajna*).

7. The damages sought by Goodin in this case were economic, i.e., the decreased value of the Sonata by reason of its allegedly defective brakes. The issue of whether privity is required if a breach of an implied warranty results in personal injury or property damage is not before us today.

cases from this court and has expressly stated: "In Indiana, privity between the seller and the buyer is required to maintain a cause of action on the implied warranties of merchantability...." *Martin Rispens & Son v. Hall Farms, Inc.*, 621 N.E.2d 1078, 1084 n. 2 (Ind.1993). We recognize this statement appears in a footnote and is not accompanied by analysis, other than citations to *Prairie Production* and *Candlelight Homes*. Nevertheless, the statement indicates our supreme court's unequivocal acceptance that privity between a consumer and a manufacturer is required in order to maintain a cause of action for breach of an implied warranty of merchantability. As an intermediate appellate court, we are obliged to follow the precedent of our supreme court. *Red Arrow Ventures, Ltd. v. Miller*, 692 N.E.2d 939, 946 (Ind.Ct.App.1998), *trans. denied*. Any change in the law removing the privity requirement in implied warranty actions should be left to that court.[8] Hence, we will not address Goodin's various public policy arguments for abolishing privity.

Our most recent discussion of privity in the implied warranty context is found in *Rheem Mfg. Co. v. Phelps Heating & Air*, 714 N.E.2d 1218 (Ind.Ct.App.1999). Goodin cites it as supporting the proposition, "Perfect vertical privity [is] not required where Manufacturer provides an express written warranty with product." Appellee's Br. p. 34. We find no such language

in the case, nor does Goodin explain how the case supports such a proposition. It is true that the opinion contains an extensive discussion of *Spring Motors Distributors, Inc. v. Ford Motor Co.*, 98 N.J. 555, 489 A.2d 660 (1985), and that New Jersey is a state that has judicially abolished the vertical privity requirement. *Rheem*, 714 N.E.2d at 1229–30. However, following that discussion, the opinion addresses whether Phelps' claim as ultimate consumer against Rheem as manufacturer for breach of an implied warranty of merchantability could survive summary judgment; it does so by applying well-settled Indiana law that there are two "exceptions" to the vertical privity requirement: where the immediate seller of a product was an agent of the manufacturer, or where the manufacturer "participated significantly in the sale" of the product.[9] *Id.* at 1230–31 (quoting *Candlelight Homes*, 414 N.E.2d at 981). Therefore, we view the discussion of *Spring Motors* and New Jersey law on the subject of privity as dicta not essential to the outcome the case. Ultimately, we concluded that "perfect vertical privity is not necessary in this case" and that there was a material issue of fact as to whether Federated, which sold Rheem furnaces to Phelps, was an agent of Rheem. *Id.* at 1231. Our comment that "perfect vertical privity is not necessary in this case," upon which Goodin places much

8. Goodin does cite to three federal court decisions that have stated privity of contract is not required in Indiana to maintain a cause of action for breach of an implied warranty. *See Filler v. Rayex Corp.*, 435 F.2d 336, 337–38 (7th Cir.1970); *Dagley v. Armstrong Rubber Co.*, 344 F.2d 245, 254 (7th Cir.1965); *Karczewski v. Ford Motor Co.*, 382 F.Supp. 1346, 1352 (N.D.Ind.1974), *aff'd*, 515 F.2d 511 (7th Cir.1975). To the extent these federal cases concern interpretations of state law and directly conflict with our supreme court's interpretation of Indiana law announced in *Martin Rispens*, they are not valid precedent. *See*

*Three Affiliated Tribes of Fort Berthold Reservation v. Wold Engineering, P.C.*, 467 U.S. 138, 151, 104 S.Ct. 2267, 2276, 81 L.Ed.2d 113 (1984) (conceding that United States Supreme Court has no authority to contradict state supreme court's interpretation of state law).

9. Although frequently referred to as "exceptions" to the vertical privity requirement, it might be more accurate to refer to these two "exceptions" as fulfilling the privity requirement, not falling outside of it.

reliance, must be taken as simply stating that an "exception" to Indiana's privity rule might be proven in the case at trial, not that the privity rule was being altered or abolished. Nor could we abolish the rule, as we have noted, because of *Martin Rispens*.[10]

We also observe that our General Assembly has had the power to curtail the vertical privity requirement in implied warranty actions. In 1963, Indiana adopted its version of the Uniform Commercial Code, including Indiana Code Section 26–1–2–318, which provides:

> A seller's warranty whether express or implied extends to any natural person who is in the family or household of his buyer or who is a guest in his home if it is reasonable to expect that such person may use, consume or be affected by the goods and who is injured in person by breach of the warranty. A seller may not exclude or limit the operation of this section.

This version of section 2–318 of the UCC is known as alternative A. The comments to this version indicate that beyond family, household, and guests of a purchaser, "the section in this form is neutral and is not intended to enlarge or restrict the developing case law on whether the seller's warranties, given to his buyer who resells, extend to other persons in the distributive chain." Ind.Code § 26–1–2–318 cmt. 3.[11] In 1966, the UCC drafters added alternative B of section 2–318, which provides that a seller's express or implied warranty extends to any natural person who may be reasonably expected to use, consume, or be affected by a product and who sustains a personal injury by reason of a breach of the warranty. Alternative C of section 2–318, also drafted in 1966, is the same as alternative B, except that it extends a seller's implied warranty to any person who may be reasonably expected to use, consume, or be affected by a product and who sustains any kind of injury because of a breach of the warranty. Courts in states that have adopted alternative B or C of section 2–318 have construed it as abolishing the vertical privity requirement in implied warranty actions. *See, e.g., S & R Associates, L.P. v. Shell Oil Co.*, 725 A.2d 431, 437 (Del.Super.1998) (addressing modified version of alternative B); *but see Nebraska Innkeepers, Inc. v. Pittsburgh–Des Moines Corp.*, 345 N.W.2d 124, 129 (Iowa 1984) (holding alternative C did not permit non-privity plaintiffs to seek recovery solely for economic loss, but only for injury to persons or property).

As we are discussing various alternatives of the UCC that have been enacted by different state legislatures, we point out that the table of jurisdictions and their approaches to the privity requirement that Goodin provided in her brief was not helpful to this court and was arguably misleading at times. For instance, the table lists thirty-nine states as not requiring privity. However, the table lists Indiana as a state not requiring privity, citing to *Rheem* for the proposition, "Perfect vertical privity not required where Manufacturer provides

---

**10.** Our supreme court granted transfer and vacated our decision in *Rheem* in part, but summarily affirmed our resolution of the implied warranty issue. *Rheem Mfg. Co. v. Phelps Heating & Air Conditioning*, 746 N.E.2d 941, 956 (Ind.2001). This is equivalent to a denial of transfer on that issue. *See Martin v. Amoco Oil Co.*, 696 N.E.2d 383, 386 n. 4 (Ind.1998).

**11.** This alternative does dispense with *horizontal* privity requirements, i.e. it allows certain third-party beneficiary non-purchasers falling outside of the distributive chain of the product, but who are in close relation to a purchaser, to sue for breach of an implied warranty. *See* I.C. § 26–1–2–318 cmt. 2. It does not affect *vertical* privity requirements.

an express written warranty with product." Appellee's Br. p. 34. We have already concluded that *Rheem* does not contain that proposition and that Indiana does generally require traditional vertical privity, subject to two narrow exceptions. The table also lists California as not requiring privity, but our review of cases fails to reveal that California is a non-privity state.[12] *See, e.g., Mills v. Forestex Co.,* 108 Cal.App.4th 625, 636 n. 3, 134 Cal. Rptr.2d 273 (2003) (stating "Privity of contract is a prerequisite in California for recovery on a theory of breach of implied warranties of fitness and merchantability.") (quoting *All West Electronics, Inc. v. M–B–W, Inc.,* 64 Cal.App.4th 717, 725, 75 Cal.Rptr.2d 509 (1998)).

Additionally, the table fails to reveal that many of the jurisdictions listed as non-privity jurisdictions have enacted versions of the UCC that have either impliedly or expressly eliminated the privity requirement, unlike Indiana. In addition to Delaware, cited above, our incomplete spot-checking of Goodin's table reveals that at least Maine, Maryland, Massachusetts, Minnesota, and New Hampshire also fall into this category. *See Stanley v. Schiavi Mobile Homes, Inc.,* 462 A.2d 1144, 1147 n. 4 (1983) (citing Me.Rev.Stat. Ann. tit. 11, § 2–318, which states "Lack of privity between plaintiff and defendant shall be no defense in any action brought against the manufacturer, seller or supplier of goods for breach of warranty, express or implied...."); *Firestone Tire & Rubber Co. v. Cannon,* 53 Md.App. 106, 110, 452 A.2d 192, 194 (1982), *aff'd,* 295 Md. 528, 456 A.2d 930 (Md.1983) (citing Md.Code Ann., Com. Law § 2–314(1)(b), which states "Any previous requirement of privity is abolished as between the buyer

and the seller in any action brought by the buyer."); *Thayer v. Pittsburgh–Corning Corp.,* 45 Mass.App.Ct. 435, 438, 703 N.E.2d 221, 225 (1998), *rev. denied* (citing Mass. Gen. Laws Ann. ch. 106, § 2–318, which expressly abolishes privity requirement and contains language similar to alternative C of section 2–318 of the UCC); *Minnesota Min. and Mfg. Co. v. Nishika Ltd.,* 565 N.W.2d 16, 20 (Minn.1997) (noting that Minn.Stat. § 336.2–318 is identical to alternative C of section 2–318 of the UCC, except that the UCC allows a seller to exclude or limit operation of the section in cases not involving personal injury); *Dalton v. Stanley Solar & Stove, Inc.,* 137 N.H. 467, 470–471, 629 A.2d 794, 797 (1993) (citing N.H.Rev.Stat. Ann. § 382–A:2–318, which court noted is the "substantive equivalent" of alternative C of section 2–318 of the UCC). Arguably, all that these cases and statutes do is emphasize that if the General Assembly feels it should be the public policy of Indiana not to require privity of contract between an ultimate consumer and a manufacturer to recover for breach of an implied warranty, it may enact legislation to implement that policy, but that it has in the meantime acquiesced in a series of cases from this court and our supreme court that have imposed the privity requirement without amending Indiana Code Section 26–1–2–318. Cases from jurisdictions with statutes abolishing the privity requirement are not helpful in determining whether the privity requirement should be judicially abolished.

We now turn to whether the evidence in the record before us supports the conclusion that Goodin was in privity of contract with Hyundai, or that one of the "exceptions" to the privity requirement

---

12. Arguably, it is telling that California, which has the reputation of being one of the more "progressive" jurisdictions in the United States, has not abandoned the allegedly "archaic" privity requirement.

was established. These two "exceptions" are where the immediate seller of a product to the ultimate consumer was an agent of the manufacturer, or where the manufacturer has participated significantly in the sale of the product. *Candlelight Homes,* 414 N.E.2d at 982. Goodin makes no argument that the dealership where she purchased the Sonata was an agent of Hyundai. This court has held that the mere existence of a manufacturer-dealer relationship is insufficient to make the dealer an agent of the manufacturer for purposes of the privity requirement. *See id.* Goodin does not direct us to any facts in the record or make any argument demonstrating that the relationship between Hyundai and the dealership falls outside of this general rule.

■ Goodin also fails to demonstrate that Hyundai participated significantly in the sale, as that "exception" to the privity requirement has been developed in the case law. For example, we held in *Goerg Boat and Motors* that the manufacturer of a defective boat had participated significantly in its sale:

> Except for the direct exchange of payment, the relationship between Richards and Kenner [the manufacturer] involved all of the attributes of a sales transaction relevant to the warranty. Richards talked with the Kenner people at the boat show. He went for the demonstration and inspection ride at their plant. He dealt directly with them concerning problems with the boat and the corrective measures to be taken. Carver [a salesman employed by the manufacturer, not the dealership] went to Michigan City and directly assured Richards in order to consummate the sale. Finally Richards received the carpenter's certificate and warranty upon final payment to Kenner. From the foregoing it must be concluded that Richards and Kenner

Boat Company had a direct relationship involving the contract of sale.

*Goerg Boat and Motors,* 179 Ind.App. at 112, 384 N.E.2d at 1092. By contrast, we held in *Prairie Production* that an ultimate consumer of pesticide was not in privity with the manufacturer, despite the manufacturer's mailing of advertisements and marketing information to the plaintiff and other consumers, where the manufacturer never directly contacted the consumer and all discussions leading to the sale of the product were between the consumer and the intermediate dealer. *See Prairie Production,* 514 N.E.2d at 1301.

After comparing the two cases, it is clear that the present case is more like *Prairie Production* and not like *Goerg Boat and Motors.* Here, although there was no evidence presented at trial on the subject, we accept Goodin's invitation to acknowledge that Hyundai advertises and markets its vehicles directly to consumers generally, as did the pesticide producer in *Prairie Production.* Beyond that, however, there is no evidence of any direct contract between Goodin and Hyundai until she called to complain about the Sonata approximately ten months after she purchased it. It appears that all of the negotiations for the sale of the Sonata took place entirely between Goodin and the dealership; there was no direct interaction between Hyundai and Goodin as there was between the boat manufacturer and consumer in *Goerg Boat and Motors.* Additionally, to the extent Goodin asked us to judicially note Hyundai's advertising campaigns, we also recognize as a matter of common knowledge that auto dealerships also conduct their own extensive, but local, advertising campaigns and offer their own "deals" to entice customers. In sum, there is insufficient evidence in the record that Hyundai "participated significantly" in the sale of the Sonata so as to bring Hyundai

within that "exception" to the privity rule. To the extent Goodin argues that "the reality of mass marketing" in modern society should give rise to privity between her and Hyundai, it is an invitation to effectively dispose of the privity requirement altogether, and we decline to do so. Appellee's Br. p. 25.

 Finally, Goodin asks us to find privity of contract between her and Hyundai for implied warranty purposes because of the express warranty Hyundai provided with the Sonata. We have already rejected this argument in the context of the Magnuson–Moss Warranty Act. Now, although we recognize the existence of some authority in other jurisdictions that might support an opposite result,[13] we reject the argument as contrary to state law. First of all, to the extent that a manufacturer's express warranty of a product undoubtedly frequently acts as an inducement to purchase that product, such inducement only reasonably extends to the terms of the express warranty itself. Hyundai has never disputed that it would have been liable to Goodin for any breach of the express warranty.

Additionally, as with the mass-marketing argument, for us to hold that extending a written, express warranty to a consumer also gives rise to privity between the consumer and manufacturer for implied warranty purposes would be to effectively abolish the privity requirement with respect to all new car sales, or for that matter the sale of almost any new product. It is difficult to think of any durable consumer good that does not come with a manufacturer's written warranty of some kind. In light of our supreme court's pronouncement that privity of contract is required with respect to implied warranties of merchantability, we believe that any such dramatic overhaul of the privity requirement must be announced by that court or the General Assembly. If we were to hold that a manufacturer's giving of an express warranty to an ultimate consumer also gives rise to privity and an enforceable implied warranty of merchantability, we would be committing an "end-run" around our supreme court's stated acceptance of the privity requirement.

Thus, we conclude that Indiana requires privity of contract between an ultimate consumer and a manufacturer of a product before the consumer may maintain a cause of action for breach of an implied warranty of merchantability, and Goodin has not demonstrated the existence of privity between her and Hyundai nor an "exception" to that rule. To the extent Goodin argues that this result is inequitable, we are not entirely unsympathetic. Whether the cons of the vertical privity rule outweigh the pros is something for either our supreme court or the General Assembly to address.

### Conclusion

Hyundai did not waive its argument that the lack of privity between it and Goodin was fatal to her implied warranty claim because it is not an affirmative defense. Furthermore, the record indicates that Hyundai placed Goodin on notice several weeks before trial that it planned to rely on the privity issue as a bar to her implied warranty claim. As for the substantive issues, Indiana requires privity between an ultimate consumer and a manufacturer

---

13. See Gochey v. Bombardier, Inc., 153 Vt. 607, 572 A.2d 921, 924 (1990) (holding provision of express warranty created privity of contract between manufacturer and consumer such that consumer could seek remedy of revocation for breach of that warranty); but see Rhodes v. General Motors Corp., 621 So.2d 945, 948 (Ala.1993) (rejecting argument that manufacturer's provision of written warranty also gave rise to privity of contract between manufacturer and consumer for implied warranty purposes).

before the consumer may hold the manufacturer liable for breaching an implied warranty of merchantability, unless the agency or significant participation in the sale "exceptions" to the rule apply. Our supreme court has adopted this rule; thus, we are not in a position to dispose of it. There is insufficient evidence that Goodin was in privity with Hyundai, that the dealership where Goodin purchased the Sonata was an agent of Hyundai, or that Hyundai participated significantly in its sale. We reverse the judgment in Goodin's favor.

Reversed.

KIRSCH, C.J., and FRIEDLANDER, J., concur.