IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
June 15, 2010 Session

## HOOD LAND TRUST v. DENNY HASTINGS ET AL.

**Appeal from the Circuit Court for Rutherford County**
**No. 53573      J. Mark Rogers, Judge**

**No. M2009-02625-COA-R3-CV - Filed October 5, 2010**

The trial court granted the defendants' motion for summary judgment with respect to multiple claims brought by a prospective seller of real property against the prospective buyers. We have concluded that the trial court erred in granting summary judgment for the defendants on the plaintiff's unjust enrichment claim. In all other respects, we affirm the decision of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed in Part, Reversed in Part**

ANDY D. BENNETT, J., delivered the opinion of the Court, in which PATRICIA J. COTTRELL, P.J., M.S., and RICHARD H. DINKINS, J., joined.

Jerry E. Farmer, Murfreesboro, Tennessee, for the appellant, Hood Land Trust by Lex Hood, Trustee.

Granville Summer R. Bouldin, Jr., and David Wayne Kious, Murfreesboro, Tennessee, for the appellees, Denny Hastings, Shane Hastings, Denny Hastings Family Limited Partnership #2, Shane Hastings Family Limited Partnership #2.

### OPINION

Lex Hood is the trustee for Hood Land Trust ("Hood"), which owns property located on Eastland Drive in Smyrna, Tennessee. Denny Hastings, his son Shane Hastings, and two family limited partnerships ("the Hastingses") own an adjacent piece of property. In early 2005, the Hastingses were in the process of purchasing property and seeking zoning changes to enable them to build a condominium complex on their property. Lex Hood and the Hastingses met on March 28, 2005, to discuss the possibility of the Hastingses purchasing

the Hood property for use in the Southside Planned Development ("SPD"). The parties put forth differing versions of that meeting: Mr. Hood claims that Denny Hastings made an unconditional promise to purchase his land, whereas the Hastingses claim that no definite deal was made.

The SPD project involved two main parcels of land. Parcel 1 abuts the Hood property. On January 6, 2005, the planning commission recommended approval of the rezoning of parcel 1 to allow the condominium development. The town council, which is required to pass an ordinance on two separate occasions, voted in favor of rezoning on January 11, 2005; the rezoning passed for the second and final time on February 8, 2005. The owners of parcel 1 conveyed their property to the Hastingses on March 10, 2005. On March 3, 2005, the planning commission approved the rezoning of parcel 2; the rezoning was approved by the town council first on March 8, 2005, and then on April 12, 2005. The Hastingses bought parcel 2 on June 17, 2005.

The Hastingses were also required to obtain site plan approval from the planning commission for both phases of the condominium project. The planning commission meeting regarding site plan approval for both phases occurred on April 7, 2005. The plans were approved with conditions, including provision of a school bus shelter and a sidewalk to Eastland Drive.

It is undisputed that there was never a written contract for the sale of the Hood property to the Hastingses. The Hastingses sent Lex Hood a draft agreement in October 2005, but he found the terms unacceptable. Mr. Hood made changes and sent an amended agreement back to the Hastingses, but they never signed it.

Hood filed this lawsuit in May 2006 alleging that the Hastingses promised in March 2005 that they would purchase his property, including a triangular piece of property claimed by Hood and by the Hastingses. According to the alleged agreement, the Hastingses would pay $175,000 for the Hood property; they would pay this price by giving Hood one of the condominiums to be built plus the difference between $175,000 and the MLS sale price of the condominium. Hood requested specific performance, damages, and/or title to the disputed triangle of property. The Hastingses answered and raised the defense of the statute of frauds; they also counterclaimed for damages for Hood's alleged encroachment on their property. The Hastingses also filed a third-party complaint against persons from whom they purchased their property; these third-party claims are not at issue in this appeal.

The parties engaged in discovery, and Hood requested and received permission to amend its complaint three times. In its fourth amended complaint, filed in July 2009, Hood asserted the following causes of action: breach of contract by promissory estoppel or

equitable estoppel, unjust enrichment, intentional misrepresentation or promissory fraud, negligent misrepresentation, violation of the Tennessee Consumer Protection Act, civil conspiracy, and adverse possession.

Hood filed a motion for partial summary judgment on its adverse possession claim in March 2009. In July 2009, the court ordered that the adverse possession claim be severed and be tried separately.

The Hastingses filed a motion for partial summary judgment in June 2009 asserting that they were entitled to judgment on all of the plaintiff's claims other than adverse possession. In support of this motion, the defendants submitted a concise statement of material facts and a supporting memorandum. In their memorandum, the defendants argued that Hood was not entitled to relief under any of the theories asserted in the complaint. Hood filed an opposing memorandum as well as the affidavit of Lex Hood, minutes of the April 12, 2005 town council meeting, and a statement of additional disputed facts.

Lex Hood's affidavit includes the following statements:

During January through March of 2005, I also made it clear to the members of the Smyrna Planning Department that I considered the Southside Planned Development to be incompatible with my property and that I opposed it.

I met with Denny Hastings on March 28, 2005 to discuss his interest in purchasing my property.

At the meeting on March 28, 2005, Denny Hastings promised me that he would purchase all of my property by swapping me a condominium plus cash totaling $175,000.00 for it. Hastings' promise was unconditional; he said nothing about due diligence or any other condition to his promise.

. . . I told Hastings that, in reliance on his promise, I would cease and desist my efforts of opposing Hastings' project with the Smyrna Planning Department, and that I would not oppose the Southside Planned Development.

. . . If Hastings and I had not struck the deal on March 28, I could and would have attended the Smyrna Planning Commission meeting of April 7, 2005 at which the site plan for Southside Phases I and II were submitted, and the Smyrna Town Council meeting of April 12, 2005, at which the rezoning of Southside Phase II was considered for passage on second and final reading.
. . .

-3-

As the result of the presence of the condominium development ingress egress adjacent to my property, I have suffered a hardship and injustice because my property is less valuable [than] it was before the development was started.

The lease for the daycare tenant on my property was due to expire at the end of December [2005], and the tenant was not going to renew. As a result of Hastings' promise to purchase my property, I did not pursue getting another quality daycare tenant for a new lease at the expiration of the term. . . . As a result, the only tenant I was able to obtain [after the deal with Hastings fell through in December 2005] on such short notice has not been a good tenant, and I have suffered hardship in the form of lost, unpaid, and uncollectible rent.

Hood also filed a response to the defendants' statement of material facts and disputed most of the facts set out in the defendants' statement. Hood did not dispute the defendants' statement that "[t]he parties never entered into a written contract."

The defendants responded to Hood's statement of additional disputed facts and admitted many of the stated facts for purposes of the summary judgment motion. The admitted facts include the following:

Hood opposed Hastings' project as incompatible with Hood property, and told both Hastings and Town of Smyrna officials so. [Admitted for purposes of the motion with the addition of a statement that "the rezoning of the portion of the property adjacent to Hood had already occurred."]

Hastings submitted a site plan to the Planning Commission for approval which required a road width of 18 feet. [Admitted with the addition of a statement that "Hood's fence encroaches upon Hastings' property.]

The widest road Hastings can provide without removing the Hood fence encroachment is 15 feet.

Hastings cannot comply with the 18 foot wide road encroachment without ejecting Hood from the existing gravel encroachment.

The Town of Smyrna required a concrete pad for school bus stop shelter as a condition of approval of the project. [Admitted as to the site plan but denied as to rezoning.]

Hastings' project showed two alternative locations for the school bus stop.

One of the locations was entirely on Hood property as described in Hood's deed.

The other location lies within the fence encroachment from which Hastings cannot eject Hood. [Admitted with respect to the location, but denied with respect to whether Hood can be ejected.]

Hood could have attended the Planning Commission meeting of April 7 and told the Planning Commission that Hastings did not have permission to use Hood's property as shown in the site plan.

Hood could have attended the Town Council meeting of April 12 and told the Town Council that Hastings did not have permission to use Hood's property as shown in the site plan.

The Hastingses also submitted the affidavits of Denny Hastings and Shane Hastings detailing their version of events, including the rezoning process and their communications with Mr. Hood. Denny Hastings' affidavit includes the following statements:

At the March 28, 2005 meeting, [Lex Hood and I] discussed the possibility of a property swap whereby I would swap Hood Land Trust a finished townhouse(s) in the Southside Planned Development for the Eastland Avenue property with any difference in the selling price of the Southside townhouse(s) and the price quoted for the Hood Land Trust property being paid in cash. . . .

At the meeting on March 28, 2005, I was unable to establish a price or value for any Southside townhouse. . . . For this reason, I could not prudently or reasonably agree to any specific swap of a townhouse property for the Hood Land Trust property on Eastland Avenue and did not make any promise to purchase the property.

. . . I told Mr. Hood that I would have a written proposal sent to him as soon as I was able to establish pricing for the Southside Development townhouses.

During our meeting on March 28, 2005, Mr. Hood did not advise me that he had either opposed or supported the rezoning of either phase of the Southside Planned Development. During our meeting on March 28, 2005, I did not ask

-5-

Mr. Hood not to oppose or to support the rezoning of Phase II of the Southside Planned Development.

. . . .

Mr. Hood continued to press for a written contract for the property swap we had discussed. Despite the fact that I still did not know what the price of the townhouse units would be, I had a contract suitable to the circumstances drafted and sent to Mr. Hood via email in October 2005. Mr. Hood responded to the draft contract by writing his own contract and sending it to me for approval on October 10, 2005. His proposed contract was not acceptable. I refused to sign it because it was not in accordance with our previous discussion.

The defendants' motion for partial summary judgment was heard on August 28, 2009. The order reflecting the court's ruling was not entered until October 14, 2009, and contains the following findings:

1. The Court heard argument on August 28, 2009, on Defendants' motion for partial summary judgment. At that time, the Court announced that it was of the opinion that Defendants had negated an essential element of each and every claim of Plaintiff. Nevertheless, the Court denied the motion based upon the uncertainty as to the proper standard in light of *[Hannan] v. Alltel Publishing*.

2. Counsel for Defendants was directed to prepare an order reflecting the Court's prior ruling. Counsel submitted such an order, which was then objected to by Plaintiff's counsel. Plaintiff's counsel submitted its own order. As of the date of the Court's motion, neither order had been entered.

3. The Court found its prior ruling to be incorrect and directed the entry of a summary judgment in favor of the Defendants as to all issues raised in their prior summary judgment motion. The Court found Plaintiff's complaint to be one for the enforcement of an oral contract for the sale of real estate. The remaining theories represented attempts to avoid the Statute of Frauds issue presented by that oral contract. The Court was therefore of the opinion that there was no genuine issue of any material fact.

Thus, the trial court granted the defendants' motion for summary judgment on all of the plaintiff's claims with the exception of the adverse possession claim.

On November 5, 2009, the court entered an agreed order altering or amending the judgment and directing, pursuant to Tenn. R. Civ. P. 54.02, that its order be a final order as to counts I through VI of the plaintiff's fourth amended complaint but not as to count VII (adverse possession).

STANDARD OF REVIEW

Summary judgment is appropriate when there is no genuine issue of material fact and the moving party is entitled to a judgment as a matter of law. Tenn. R. Civ. P. 56.04. Summary judgments do not enjoy a presumption of correctness on appeal. *BellSouth Adver. & Publ'g Co. v. Johnson,* 100 S.W.3d 202, 205 (Tenn. 2003). We consider the evidence in the light most favorable to the non-moving party and resolve all inferences in that party's favor. *Godfrey v. Ruiz,* 90 S.W.3d 692, 695 (Tenn. 2002). When reviewing the evidence, we must determine whether factual disputes exist. *Byrd v. Hall,* 847 S.W.2d 208, 211 (Tenn. 1993). If a factual dispute exists, we must determine whether the fact is material to the claim or defense upon which the summary judgment is predicated and whether the disputed fact creates a genuine issue for trial. *Id.; Rutherford v. Polar Tank Trailer, Inc.,* 978 S.W.2d 102, 104 (Tenn. Ct. App. 1998). To shift the burden of production to the nonmoving party who bears the burden of proof at trial, the moving party must negate an element of the opposing party's claim or "show that the nonmoving party cannot prove an essential element of the claim at trial." *Hannan v. Alltel Publ'g Co.,* 270 S.W.3d 1, 8-9 (Tenn. 2008).

ANALYSIS

We must determine whether the trial court erred in granting summary judgment on Hood's claims for breach of contract, unjust enrichment, intentional misrepresentation, negligent misrepresentation, violation of the Tennessee Consumer Protection Act, and civil conspiracy. To make these determinations, we will be required to examine and carefully apply the summary judgment principles set out by our Supreme Court in *Hannan v. Alltel Publishing Co.,* 270 S.W.3d at 8.

I.

With respect to Hood's cause of action for breach of contract, the Hastingses have raised the affirmative defense of the statute of frauds. A defendant moving for summary judgment can shift the burden of production to the plaintiff by coming forward with undisputed facts showing that the defendant is entitled to an affirmative defense. *Id.* at 9 n.6. In this case, it is undisputed that there was no written contract between Hood and the Hastingses and that the purported agreement involved the sale of real property. The applicable statute of frauds, found at Tenn. Code Ann. § 29-2-101, provides that "no action shall be brought . . . upon any contract for the sale of lands . . . unless the promise or agreement, upon which such action shall be brought, or some memorandum or note thereof,

shall be in writing, and signed by the party to be charged therewith . . . ." Thus, based on the undisputed facts, the Hastingses would be entitled to judgment as a matter of law under the statute of frauds. Using this defense, the defendants shifted the burden of production to Hood to show the existence of a genuine issue of material fact.

If the moving party shifts the burden of production, "the non-moving party may not simply rest upon the pleadings, but must offer proof to establish the existence of the essential elements of the claim."[1] *Staples v. CBL & Assocs., Inc.*, 15 S.W.3d 83, 89 (Tenn. 2000). This case is in a somewhat unusual posture: to counter the statute of frauds defense, Hood relies on the doctrine of equitable estoppel.[2] Because the defendants are the moving parties, we must view the evidence in the light most favorable to the plaintiff. *Godfrey*, 90 S.W.3d at 695. However, because the plaintiff is asserting an exception to the statute of frauds (as opposed to asserting the existence of disputed material facts as to the elements of its cause of action) in order to defeat the defendants' motion for summary judgment, the plaintiff must produce evidence to show that it is entitled to the benefit of the doctrine of equitable estoppel.

Our courts have generally held that "part performance of a parol contract for the sale of land will not take the agreement out of the statute of frauds." *Baliles v. Cities Serv. Co.*, 578 S.W.2d 621, 624 (Tenn. 1979). To mitigate the harshness of this rule, the courts have applied "the doctrine of equitable estoppel in exceptional cases where to enforce the statute of frauds would make it an instrument of hardship and oppression, verging on actual fraud." *Id.* The elements of equitable estoppel are:

---

[1]The court in *Staples* further stated:

> A non-moving party may satisfy his or her burden by (1) pointing to evidence overlooked or ignored by the moving party that establishes a material factual dispute, (2) by rehabilitating the evidence attacked in the moving party's papers, (3) by producing additional evidence showing the existence of a genuine issue for trial, or (4) submitting an affidavit explaining why further discovery is necessary as provided for in Tenn. R. Civ. P. 56.06.

*Staples v. CBL & Assocs., Inc.*, 15 S.W.3d 83, 89 n.2 (Tenn. 2000).

[2]Hood also asserts promissory estoppel, but this doctrine has not been recognized as an exception to the statute of frauds. *Seramur v. Life Care Ctrs. of Am., Inc.*, No. E2008-01364-COA-R3-CV, 2009 WL 890885, at *5 (Tenn. Ct. App. Apr. 2, 2009); *Nationsbank, N.A. (S.) v. Millington Homes Investors, Ltd.*, No. 02A01-9805-CH-00134, 1999 WL 79204, at *3-4 (Tenn. Ct. App. Feb. 19, 1999). In the case cited by Hood, *Shedd v. Gaylord Entertainment Co.*, No. M2002-00258-COA-R3-CV, 118 S.W.3d 695, 700 (Tenn. Ct. App. 2003), the court rejected the defense of promissory estoppel based on the facts alleged.

(1) Conduct which amounts to a false representation or concealment of material facts, or, at least, which is calculated to convey the impression that the facts are otherwise than, and inconsistent with, those which the party subsequently attempts to assert;

(2) Intention, or at least expectation that such conduct shall be acted upon by the other party;

(3) Knowledge, actual or constructive of the real facts.

*Osborne v. Mountain Life Ins. Co.*, 130 S.W.3d 769, 774 (Tenn. 2004); *see also Nationsbank, N.A. (S.) v. Millington Homes Investors, Ltd.*, No. 02A01-9805-CH-00134, 1999 WL 79204, at *4 (Tenn. Ct. App. Feb. 19, 1999). With respect to the party claiming estoppel, there must also be lack of knowledge and the means of knowledge of the truth, reliance upon the conduct of the estopped party, and a prejudicial change of position. *Osborne*, 130 S.W.3d at 774.

In this case, Hood's equitable estoppel theory is that the Hastingses told Mr. Hood that they would purchase the Hood property and knew that this promise would result in Mr. Hood not opposing the development. We agree with the following statement concerning the difference between equitable estoppel and promissory estoppel[3]:

In the typical equitable estoppel situation, the defendant has represented an *existing or past fact* to the plaintiff, who reasonably and in ignorance relied upon the representation to his detriment. Equitable estoppel necessarily precluded the claimant's reliance on the defendants' *present or future* intention, which initiated the development of promissory estoppel.

21 Steven W. Feldman, TENNESSEE PRACTICE SERIES: CONTRACT LAW AND PRACTICE § 5.25 (2009). Thus, even if we accept the plaintiff's assertion that the defendants promised they would buy the Hood property,[4] we do not consider a promise alone sufficient to constitute a representation of material fact for purposes of equitable estoppel. Moreover, even if such a promise or statement of future intention can be a representation of material fact, the

---

[3]As stated in the preceding footnote, promissory estoppel is not applicable in this case because it is not an exception to the statute of frauds.

[4]The Hastingses assert that the negotiations broke down, that the parties were unable to come to a final agreement, and that they did not expect any change in behavior by Mr. Hood with respect to opposing the development or finding a new tenant.

undisputed facts alleged by Hood do not present the kind of egregious circumstances verging on actual fraud necessary to justify equitable estoppel. *See Smith v. Smith*, No. M2004-00257-COA-R3-CV, 2005 WL 3132370, at *9 (Tenn. Ct. App. Nov. 22, 2005). Hood retains all of its property. The only damage it allegedly sustained relates to the effect of the new development on the value of its property and to the delay in obtaining a new tenant.

We therefore conclude that the trial court properly granted summary judgment in favor of the defendants on the breach of contract claim.

## II.

Hood asserts a claim for unjust enrichment, which is a quasi-contractual cause of action not precluded by the statute of frauds. *EnGenius Entm't, Inc. v. Herenton*, 971 S.W.2d 12, 20-21 (Tenn. Ct. App. 1997). The elements of unjust enrichment are 1) "[a] benefit conferred upon the defendant by the plaintiff," 2) "appreciation by the defendant of such benefit," and 3) "acceptance of such benefit under such circumstances that it would be inequitable for [the defendant] to retain the benefit without payment of the value thereof." *Freeman Indus., LLC v. Eastman Chem. Co.*, 172 S.W.3d 512, 525 (Tenn. 2005) (quoting *Paschall's, Inc. v. Dozier*, 407 S.W.2d 150, 155 (Tenn. 1966)).

As the moving party, the Hastingses were required to negate an essential element of this claim or conclusively show that Hood could not prove an essential element at trial. *Hannan*, 270 S.W.3d at 8-9. It is not enough to argue that the nonmoving party has no evidence or to point to evidence that raises doubts about the nonmoving party's ability to prove his or her claim. *Martin v. Norfolk S. Ry. Co.*, 271 S.W.3d 76, 83-84 (Tenn. 2008). To negate an essential element of the plaintiff's claim, the defendant "must point to evidence that tends to disprove an essential factual claim made by the nonmoving party." *Id.* at 84.

In the unjust enrichment claim, Hood asserts that the Hastingses received a benefit in the form of "silent support of Hastings['] condominium development and use of Hood property by situating the bus stop and sidewalk thereon." The Hastingses argue that the rezoning of the property adjacent to the Hood property had already occurred at the time of the alleged agreement in March 2005[5] and that "Hood makes a bold assertion in implying that it had the ability to prevent the approval of [the site plan]." They further reason that no quantifiable benefit was conferred by the plans showing sidewalks and a bus stop on disputed property. While it seems unlikely that Hood will be able to establish a benefit received by the Hastingses sufficient to constitute unjust enrichment, the defendants' arguments rely on Hood's failure to produce evidence thus far rather than actually disproving any benefit. We

---

[5]Site plan approval and rezoning of parcel 2 had not been finalized.

therefore conclude that the burden of production was never shifted to Hood and that the trial court erred in granting summary judgment on the unjust enrichment claim.

III.

The next claim at issue is for intentional misrepresentation in the form of promissory fraud. Promissory fraud is a kind of fraud "perpetrated by means of a false promise of future action." *Shahrdar v. Global Housing, Inc.*, 983 S.W.2d 230, 237 (Tenn. Ct. App. 1998). The elements of promissory fraud, or fraudulent inducement, are as follows:

> (1) an intentional misrepresentation of a fact material to the transaction; (2) knowledge of the statement's falsity or utter disregard for its truth; (3) an injury caused by reasonable reliance on the statement; and (4) a promise of future action with no present intent to perform.

*Houghland v. Houghland*, No. M2005-01770-COA-R3-CV, 2006 WL 2080078, at *3 (Tenn. Ct. App. July 26, 2006); *see also Shahrdar*, 983 S.W.2d at 237. Hood alleges in the complaint that "Hastings[6] made false statements to Hood regarding Hastings' intent to purchase the Hood property" and that "[t]hese statements were false when made, and Hastings knew they were false, or Hastings made them recklessly, or without belief in their truth."

Did the defendants negate an essential element of the plaintiff's claim for promissory fraud? In his affidavit, Denny Hastings described the March 2005 meeting, stating that he expressed an interest in buying the Hood property but "did not make any promise to purchase the property." We consider this affidavit sufficient to negate at least one element of the promissory fraud claim since Mr. Hastings denies making any promise of future action. The burden of production then shifted to the plaintiff to show that a genuine issue of material facts exists.

Although Mr. Hood stated in his affidavit that Denny Hastings promised that he would purchase the Hood property, the plaintiff did not present any evidence from which it could reasonably be inferred that Mr. Hastings never intended to keep his alleged promise to purchase the Hood property. The "[f]ailure to perform a promise, standing alone, is not competent evidence that the promisor never intended to perform." *Am. Cable Corp. v. ACI Mgmt., Inc.*, M1997-00280-COA-R3-CV, 2000 WL 1291265, at *5 (Tenn. Ct. App. Sept. 14, 2000); *see also Stacks v. Saunders*, 812 S.W.2d 587, 593 (Tenn. Ct. App. 1990). The plaintiff did not come forward with evidence creating an issue of material fact with regard

---

[6]Although the complaint does not specify, these allegations presumably refer to Denny Hastings.

to the element of intent required for promissory fraud. We therefore conclude that the trial court properly granted summary judgment on the claim for intentional misrepresentation in the form of promissory fraud.

IV.

Negligent misrepresentation requires a plaintiff to prove the following elements:
(1) the defendant is acting in the course of his business, profession or employment, or in a transaction in which he has a pecuniary (as opposed to gratuitous) interest; *and*

(2) the defendant supplies faulty information meant to guide others in their business transaction; *and*

(3) the defendant fails to exercise reasonable care in obtaining or communicating the information; *and*

(4) the plaintiff justifiably relies upon the information.

*Ritter v. Custom Chemicides, Inc.*, 912 S.W.2d 128, 130 (Tenn. 1995). The false information supplied must "consist of a statement of a material past or present fact." *McElroy v. Boise Cascade Corp.*, 632 S.W.2d 127, 130 (Tenn. Ct. App. 1982); *see also Cummins v. Opryland Prods.*, No. M1998-00934-COA-R3-CV, 2001 WL 219696, at *8 (Tenn. Ct. App. Mar. 7, 2001). Statements of intention or representations concerning future events cannot form the basis for a claim of negligent misrepresentation. *Naifeh v. Valley Forge Life Ins. Co.*, No. W2003-02800-COA-R3-CV, 2005 WL 1073647, at *8-9 (Tenn. Ct. App. May 5, 2005); *Gardner v. Anesthesia & Pain Consultants, P.C.*, No. E2003–03027-COA-R3-CV, 2004 WL 2715304, at *6 (Tenn. Ct. App. Nov. 30, 2004); *McElroy*, 632 S.W.2d at 130.

The plaintiff's claim for negligent misrepresentation is based upon the allegation that Denny Hastings "supplied false information in the form of Hastings' intent to purchase the Hood property for the guidance of Hood in its business transactions." Even if we accept the facts as alleged by Hood, Mr. Hastings's alleged statements concerning his intention to buy the Hood property cannot, as a matter of law, make out a claim for negligent misrepresentation. There is no statement of material fact alleged. The trial court properly granted summary judgment for the defendants on the claim for negligent misrepresentation.

V.

Hood also alleges a cause of action for violation of the Tennessee Consumer Protection Act ("TCPA"), Tenn. Code Ann. § 47-18-101 *et seq.* Hood bases its TCPA claim on the alleged promise of the Hastingses that they would buy the Hood property and characterizes the actions of the Hastingses as deceptive acts or practices.

Even if we accept Hood's version of the facts, however, we do not end up with a set of facts that constitute a cause of action under the TCPA. One of the stated purposes of the TCPA is to "protect consumers and legitimate business enterprises from those who engage in unfair or deceptive acts or practices *in the conduct of any trade or commerce* in part or wholly within this state." Tenn. Code Ann. § 47-18-102(2) (emphasis added). A "consumer" is defined as "any natural person who *seeks or acquires* by purchase, rent, lease, assignment, award by chance, or other disposition, any goods, services, or property . . . ." Tenn. Code Ann. § 47-18-103(2) (emphasis added). The terms "trade," "commerce," or "consumer transaction" are defined to mean "the advertising, offering for sale, lease or rental, or distribution of any goods, services, or property . . . ." Tenn. Code Ann. § 47-18-103(11). The TCPA provides that "[u]nfair or deceptive acts or practices *affecting the conduct of any trade or commerce* constitute unlawful acts or practices and are Class B misdemeanors." Tenn. Code Ann. § 47-18-104(a) (emphasis added).

Pursuant to Tenn. Code Ann. § 47-18-109(a)(1), "[a]ny person who suffers an ascertainable loss of money or property . . . as a result of the use or employment by another person of an unfair or deceptive act or practice declared to be unlawful by this part, may bring an action individually to recover actual damages." Tenn. Code Ann. § 47-18-104(a) defines unfair or deceptive practices as those affecting trade or commerce, and Tenn. Code Ann. § 47-18-103(11) defines trade or commerce as "advertising, offering for sale, lease or rental, or distribution." Hood asserts injury as a result of the defendants' actions/communications in their role as prospective buyers of the Hood property. Under the facts as alleged by Hood, the plaintiff was a seller, not a consumer suffering injury as a result of unfair or deceptive practices. We find nothing in the TCPA that contemplates "protecting" a seller from a prospective buyer who decides not to buy.

In *Wagner v. Fleming*, 139 S.W.3d 295, 297 (Tenn. Ct. App. 2004), the plaintiff held an auction to sell his property, and the defendants took various actions in an effort to stop the sale of the property. The plaintiff rejected the bids at the auction as being too low. *Id.* A jury returned a verdict for the plaintiff and found that the defendants violated the TCPA. *Id.* at 300. The appellate court determined that the conduct of the defendants was not covered by the TCPA. *Id.* at 301. The court applied the following reasoning:

At the time these defendants engaged in the conduct of which the plaintiff complains, they were not involved in any activity covered by the [TCPA]. The *defendants* were not offering real property for sale. *See* Tenn. Code Ann. § 47-18-103(11). In fact, the defendants were not offering anything for sale. The defendants simply placed signs along their property in order to warn as many people as possible that the Armstrong Project was still a threat to their community. Such activity does not fall within the definition of "trade" or "commerce" under the Act.

The Act protects "consumer[s]." *See* Tenn. Code Ann. § 47-18-102(2). In this case, the plaintiff seeks protection under the Act; however, the plaintiff in this case is *not* a consumer with respect to the defendants because he was not seeking to purchase anything from them. *See* Tenn. Code Ann. § 47-18-103(2). Instead, the plaintiff was acting as a seller because he was offering real estate for sale. Therefore, we hold that the trial court erred in holding that the Act applies to the facts of this case.

*Id.*

In this case, the *Wagner* reasoning supports the conclusion that the conduct alleged by Hood is not covered by the TCPA. Hood was not acting as a consumer, and the Hastingses were seeking to buy, not to sell. Hood argues that it would have been a consumer with respect to the condominium unit proposed as part of the purchase price for the Hood property. Even if we were to accept Hood's characterization, however, the conduct about which Hood complains took place in the Hastingses' role as buyers.

Hood also argues that the TCPA is not limited in its application to consumers. Hood points to the language of Tenn. Code Ann. § 47-18-109(a)(1), which creates a private right of action for "[a]ny person" aggrieved by actions defined as unfair or deceptive. Tenn. Code Ann. § 47-18-103(9) defines "person" to include corporations. Hood also cites Tenn. Code Ann. § 47-18-102(2), which refers to "consumers and legitimate business enterprises" and to Tenn. Code Ann. § 47-18-109(a)(4), regarding treble damages, which refers to "the consumer or other person." These provisions, which were added to the TCPA in 1989, make clear that the legislature intended to give corporations standing to sue under the act.[7] *See*

_____

[7]Hood cites *Bridgeport Music, Inc. v. 11C Music, Inc.*, 154 F. Supp. 2d 1330, 1333 (M.D. Tenn. 2001), a case in which the court interpreted the 1989 amendments as precluding any "buying requirement" for TCPA plaintiffs. We find this case factually distinguishable in that the plaintiffs were copyright holders complaining of injury as a result of the actions of the defendant publishing companies and other

(continued...)

*ATS Se., Inc. v. Carrier Corp.*, 18 S.W.3d 626, 628-30 (Tenn. 2000). We do not, however, find any support for the interpretation of the plaintiff that, as a prospective seller, it has a cause of action under the TCPA based upon the defendants' alleged conduct as potential buyers. *See generally* Michelle L. Evans, *Who is a "consumer" entitled to protection of state deceptive trade practices and consumer protection acts*, 63 A.L.R.5th 1, §20 (1998).

We conclude that the trial court properly granted summary judgment in favor of the defendants on the TCPA claim.

VI.

The final cause of action at issue on appeal is for civil conspiracy. Hood alleges that the defendants "agreed to engage in concerted action to deceive Hood, and did deceive Hood by intentional misrepresentation and violation of the Tennessee Consumer Protection Act." A civil conspiracy is a "combination between two or more persons to accomplish by concert an unlawful purpose, or to accomplish a purpose not in itself unlawful by unlawful means." *Chenault v. Walker*, 36 S.W.3d 45, 52 (Tenn. 2001). Since we have previously concluded that the trial court properly granted summary judgment in favor of the defendants on the two underlying torts alleged by Hood, intentional misrepresentation and violation of the TCPA, we conclude that the trial court properly granted summary judgment on the civil conspiracy claim.

VII.

Hood's final argument is that "the trial court erred by granting summary judgment *sua sponte* with no notice to Plaintiff." We find this argument to be without merit.

The term "sua sponte" means "without prompting or suggestion; on its own motion." BLACK'S LAW DICTIONARY 1464 (8th ed. 2004). The trial court did not grant summary judgment without prompting or on its own motion. The defendants made a motion for summary judgment, which the trial court initially denied. At a later hearing, before the entry of its order, the trial court decided to grant summary judgment. Moreover, even if the trial court had granted summary judgment sua sponte, such action would have been within its authority so long as the plaintiff had a "full and fair opportunity" to oppose the motion.

---

[7](...continued)
organizations. The defendants did sell goods, and the court rejected their argument that the plaintiffs could not sue because it was not they themselves who purchased the goods. *Id.* In our case, the defendants are the prospective buyers and the plaintiff is the prospective seller.

*Thomas v. Transport Ins. Co.*, 532 S.W.2d 263, 266 (Tenn. 1976).  In this case, Hood had a full opportunity to make its arguments to the court; the court changed its ruling prior to the entry of the order on the motion for summary judgment.

CONCLUSION

The judgment of the trial court is reversed with respect to the unjust enrichment claim. In all other respects, we affirm the trial court's decision.   Costs of appeal are assessed one half to the appellant and one half to the appellees, and execution may issue if necessary.


_____
ANDY D. BENNETT, JUDGE